UNITED STATES of America, Plaintiff–Appellee,

v.

Burnis L. HAYWOOD, Defendant–Appellant.

No. 95–1239.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1995.

Decided Nov. 28, 1995.

---

Randy G. Massey (argued), Office of United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Donald R. McNeal (argued), Houston, TX, for Defendant–Appellant.

Before BAUER, KANNE and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Burnis Haywood was charged and convicted of one count of conspiracy to distribute

cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. On appeal, Haywood asserts that the district court erred in permitting the "expert" testimony of one witness and in limiting defense counsel's cross-examination of that witness. We affirm the conviction.

## I.

In 1992, law enforcement agents began investigating a conspiracy that imported cocaine from Texas and redistributed the cocaine as cocaine or cocaine base in southern Illinois. Members of the conspiracy included Charlie Mitchell Johnson, Gary Studo, Jerome Powers, Herman Smith, Jr., Fred Smith, Lonnie Somach, Cynthia Vargas, Bernadette Williams, Daryl Ramone Wilson, Marisela Mejia and Burnis Haywood. Charlie Mitchell Johnson and Gary Studo acted as the Texas sources of the cocaine supply. Jerome Powers, Herman Smith, Jr., and Fred Smith would purchase cocaine from Johnson and/or Studo and redistribute it in southern Illinois. Couriers transported the money and drugs between Illinois and Texas.

On April 21, 1993, a federal grand jury in the Southern District of Illinois issued an eight-count indictment that named Burnis Haywood and the ten others listed above. Haywood was named only in count I, which charged all eleven defendants with conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. The ten codefendants pleaded guilty.

At trial, the government called nine of the ten codefendants to testify about Haywood's role in the conspiracy. The government submitted into evidence the various plea agreements signed by those codefendants, as well as the stipulations of facts that accompanied each agreement. During cross-examination

of Gary Studo, who had entered a noncooperating guilty plea, defense counsel attempted to show that Studo had lied on the witness stand because he had testified to matters not included in the stipulation of facts that he had signed as part of his plea agreement. Defense counsel also tried to show that the possibility of receiving credit for his cooperation against Haywood gave Studo a motive to lie in his plea agreement or in his testimony at trial. The prosecutor later called Studo's attorney, Phillip Kavanaugh, to testify about Studo's plea agreement, and specifically about whether Studo's stipulation of facts was intended to be all-inclusive. Kavanaugh also testified that Studo had entered a noncooperating plea agreement. In addition, Kavanaugh testified generally about proffers and about how a defendant might obtain a reduced sentence in exchange for his or her cooperation in an investigation. The prosecutor did not move to qualify Kavanaugh as an expert witness, nor did the district court declare him an expert.

Defense counsel sought to impeach Kavanaugh with a letter written by Kavanaugh to Studo in December 1992. In this letter, written more than two months before Studo entered his noncooperating plea agreement in February 1993, Kavanaugh indicated that the government might give Studo some kind of credit in exchange for his cooperation against Haywood. The prosecutor objected to the letter's relevance, and the district court subsequently admitted into evidence a redacted version of the letter.[1]

## II.

### A. *Expert Witness Testimony*

On appeal, Haywood first asserts that Phillip Kavanaugh testified as an expert witness, and that the district court abused its

---

1. The redacted letter contained the following two paragraphs:

"After our meeting last Friday I approached the prosecutor regarding some of the sentencing suggestions we discussed. To make a long story short, he is pretty adamant about his position that your offense conduct falls at a level 34. He feels he can prove it in court.

. . . . .

In the final analysis, the prosecutor remains firm on his opinion that your offense conduct is a

level 34. He will not agree to anything less. He will give you credit for cooperation against Haywood. He might give you substantial credit. Whether or not to cooperate is a decision you must make on your own." Defendant's Trial Exhibit 1.

discretion in allowing Kavanaugh's testimony because that testimony impermissibly "invaded areas in the exclusive province of the jury" by bolstering Gary Studo's credibility. We agree that certain aspects of Kavanaugh's testimony came quite close to being expert testimony, even if the district court did not qualify Kavanaugh as an expert.[2] However, whether Kavanaugh testified as an expert or as a lay witness has no bearing on our analysis, because the standard of review remains the same. We must determine whether the district court abused its discretion in allowing Kavanaugh's testimony. *See, e.g., United States v. Willis,* 61 F.3d 526, 533 (7th Cir.1995) (appellate court reviews rulings concerning admission of expert testimony for abuse of discretion); *United States v. Saulter,* 60 F.3d 270, 275 (7th Cir.1995) (appellate court reviews evidentiary rulings for abuse of discretion). During the sidebar discussion that followed defense counsel's initial objection to Kavanaugh's testimony, the district court stated that counsel had opened the door to the testimony by creating an inference that a stipulation of facts was all-inclusive, and that if Studo (and the other codefendants who had pleaded guilty) had testi-

fied to something not included in his stipulation of facts, then he must have lied in his stipulation or on the stand. This conclusion was not unreasonable, nor was it beyond the scope of the district court's discretion.[3]

### B. *Limitation of Cross–Examination*

Haywood next contends that the district court violated his Sixth Amendment confrontation rights by "severely limiting otherwise appropriate cross-examination intended to show bias and motivation of an adverse witness, Phillip Kavanaugh." Specifically, Haywood asserts that the district court erred in restricting cross-examination of Kavanaugh to the redacted version of Kavanaugh's December 1992 letter to Gary Studo.[4] Haywood did not raise this objection at trial.

 Even if we assume, without deciding, that the district court (and not defense counsel himself) limited cross-examination of Kavanaugh to the redacted letter and that Haywood's failure to object was a forfeiture of the right to object rather than a waiver, there is no basis for reversing the conviction.[5] *See United States v. Akinrinade,* 61

---

**2.** Several of the prosecutor's questions invited expert testimony, even though the prosecutor did not move to qualify Kavanaugh as an expert witness. For example, the prosecutor asked Kavanaugh to "tell the jury what a stipulation of facts is" and to explain "proffers." Furthermore, Kavanaugh testified not only about Studo's plea agreement, but about plea agreements generally. He also provided general information about proffers, stipulations of facts, and reductions in sentences in exchange for defendants' cooperation. We further note that, although defense counsel several times referred to Kavanaugh as an "expert," the prosecutor never sought to correct that assertion.

**3.** We recognize, however, that the general information contained in Kavanaugh's testimony about the plea and proffer process preferably would have been conveyed to the jury in another way (for example, in the jury instructions). Nevertheless, as we discuss in this opinion, the district court did not abuse its discretion in allowing Kavanaugh to testify.

Even if Kavanaugh were an expert, the substance of his testimony did not exceed the bounds of permissible expert testimony. Although credibility is not a proper subject for expert testimony, *see United States v. Benson,* 941 F.2d 598, 604 (7th Cir.1991), Kavanaugh did not tell the jury to believe Studo (or not to believe him). At most, his testimony might have given

the jury a reason to credit Studo's testimony. This, as *Benson* indicates, is permissible.

**4.** Haywood incorrectly states that the district court prohibited cross-examination about the entire document even though the entire document was admitted into evidence. The record clearly indicates that, after reserving its ruling as to the letter's relevance, the district court admitted only the redacted version of the letter. Tr. 560–561. This redacted version, not the entire letter, was sent to the jury.

**5.** Despite Haywood's claims, it is not clear from the record that the district court limited defense counsel's cross-examination of Kavanaugh to the redacted version of the letter. Indeed, it was defense counsel, not the court, who initially limited discussion of the letter to paragraphs one and four, which later comprised the redacted letter.

Furthermore, the following exchange between defense counsel and the court indicates that defense counsel approved the court's subsequent admission of the redacted letter:

THE COURT: Well in any event, I'm going to let this fourth paragraph in, but I don't see that there is anything else in the letter that needs to go in.

[DEFENSE COUNSEL]: What's come into the record and I thank you for that, is paragraph one. I didn't read—all I read was the reading.

F.3d 1279, 1283 (7th Cir.1995); *see also United States v. Penny*, 60 F.3d 1257, 1261 (7th Cir.1995) (distinguishing between "waiver" and "forfeiture"). We review forfeited claims for plain error. See Fed.R.Crim.P. 52(b); *United States v. Olano*, 507 U.S. 725, ——, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). Only those errors that affect substantial rights and "seriously affect the fairness, integrity, or public reputation of judicial proceedings," *Olano*, 507 U.S. at ——, 113 S.Ct. at 1779, quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), amount to plain error warranting reversal. In this case, where Haywood had a full opportunity to cross-examine Kavanaugh and to gain whatever conceivable strategic advantage he wished to gain by questioning Kavanaugh's credibility and alleged bias, the district court's admission of the redacted letter did not constitute error, let alone plain error. *See United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994) ("[w]hile the Sixth Amendment guarantees a defendant the right to cross-examine witnesses, it allows a trial judge to place reasonable limits on the cross-examination"); *United States v. Aguilar*, 948 F.2d 392, 397 (7th Cir.1991) ("the Sixth Amendment only guarantees the defendant the opportunity for effective, not limitless, cross-examination").

 Haywood also contends that, by restricting defense counsel's questions to the redacted version of the letter, the district court prohibited him from engaging in otherwise appropriate cross-examination of Phillip Kavanaugh that would have demonstrated Gary Studo's bias and motivation to testify. He bases this argument on the notion that Kavanaugh's letter indicated that the government might give Studo some credit for cooperating against Haywood, and that therefore Studo had a strong motivation to exaggerate or fabricate his testimony. Again assuming that we review for plain error, there is no basis for reversal. This argument fails for several reasons, the most compelling of which is that Studo entered a noncooperating plea and thus had no agreement with the government to testify in exchange for some benefit in terms of his own conviction or sentence. In addition, Haywood has not established, nor does he assert, that the district court impermissibly limited his cross-examination of Gary Studo. The record indicates that Haywood had sufficient opportunity to conduct an effective cross-examination of Studo, and that he never sought to use the letter in that cross-examination.[6] In light of these considerations, we conclude that the district court's ruling did not amount to plain error warranting reversal. *See Akinrinade*, 61 F.3d at 1283.

### Conclusion

For the foregoing reasons, we affirm Haywood's conviction.

AFFIRMED.

THE COURT: Well, I think you could get that in as a preamble.
[DEFENSE COUNSEL]: On what this is about.
THE COURT: Paragraph one and four. ,
[DEFENSE COUNSEL]: Those are the ones we read.

. . . . .

THE COURT: [The jury] can look at this letter, and see it. If you want to, if you want to block all this out except this paragraph and this paragraph [paragraphs one and four], I'll let you use it in your closing argument, but this is what we're going to send to the jury.

[DEFENSE COUNSEL]: All right, sir. That's fair with me.
Tr. 560–561.

6. Furthermore, Haywood has not demonstrated that admission of only the redacted version of the letter precluded him from implying (correctly or incorrectly) that Studo had cooperated in order to get credit from the government. The paragraphs admitted clearly stated that such credit might be possible in exchange for Studo's cooperation against Haywood. Thus, any strategic advantage gained by Haywood from cross-examining Kavanaugh about the entire letter would have been marginal, at best.