UNITED STATES of America,
Plaintiff–Appellee,

v.

Trance L. BURSEY, Defendant–
Appellant.

No. 95–2654.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1996.

Decided May 30, 1996.

Thomas Edward Leggans (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Brian D. Lewis (argued), Marion, IL, for Defendant–Appellant.

Before CUDAHY, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

On December 6, 1994, a jury convicted Trance Bursey of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Bursey was sentenced to 36 months imprisonment. He appeals his conviction, claiming that the jury was improperly allowed to hear certain testimony and that, at a minimum, a limiting instruction should have been provided regarding this testimony. We affirm the conviction.

## I.

Around 4:00 p.m. on August 30, 1994, police officers James Temple and Lynn Trella were on patrol in their squad car in the 400 block of East Chestnut in Carbondale, Illinois, an area known for drug trafficking. As they emerged from an old alley in the area, they observed one man walking toward another man. Officer Temple testified that he immediately recognized the first man as Trance Bursey, whom he knew by name. Both officers testified that when this man looked up and realized that they were there watching, he threw what looked like a white piece of paper or a white object to the ground and took off. Officer Temple then pursued the man on foot, while Officer Trella went over and recovered the white object, which turned out to be seven individually-packaged rocks of crack cocaine wrapped up in white paper. Although Officer Temple was unable that day to find the man who threw down the white package, a warrant was issued for the arrest of Trance Bursey, based upon Temple's identification of him as the man who threw down the cocaine package.

The main issue at trial was Officer Temple's identification of Bursey.[1] Temple testified on direct examination that at the time of the encounter, he'd had over 20 previous contacts with Bursey, including custodial contacts.[2] When defense counsel objected to the

---

[1]. The other issue at trial was whether the recovered cocaine base, which totalled only 1.5 grams, was for distribution purposes. The defendant, however, makes no challenge to his conviction on this basis.

[2]. When defendant Bursey took the stand, he admitted that he could remember "over six" previ-

government's question about what was meant by a "custodial contact," the district court responded as follows:

> Okay. The Court's going to overrule the objection, but the Court's going to instruct the jury that the testimony that Officer Temple, I believe, is about to give about the custodial contacts with the defendant is being admitted for a limited purpose only to show his knowledge of the defendant and for purposes of identification and is not to be construed as a propensity by this defendant to have committed this crime or any other crimes. . . .

Temple then testified that the custodial contacts were when Bursey had been either briefly detained or arrested and that he had been personally involved in four arrests of Bursey. Temple emphasized his opportunity to view Bursey closely during these arrests. Temple also testified to various other personal contacts with Bursey during his police work, including times when Bursey was a victim.

Temple acknowledged on cross examination that he was 30 to 40 feet away when he first spotted the man with the white package and that he only observed his face for about 10 seconds. Officer Temple maintained, however, that he had known Bursey for four to five years and that there was no doubt in his mind that Trance Bursey was the man he observed throwing down the white package that day. Later in this cross examination, defense counsel posed the following question to Temple: "Would you consider [Trance Bursey] to be street smart." Temple responded affirmatively. Defense counsel acknowledged at oral argument that it was his theory, and that he argued to the jury, that someone who was "street smart" wouldn't just drop his drugs right in front of the cops, especially if he suspected he'd been recognized.

The government began its redirect by asking, "Officer Temple, upon what do you base your assessment that the defendant is street smart?". When Officer Temple started to testify about various police investigations of Bursey for criminal activities, defense coun-

sel made a hearsay objection. The court determined, however, that the defense had "opened the door" and overruled the objection. Temple then testified that the police department had received information that Bursey was involved in selling drugs and that he was a member of a group called "the blunt squad," whose members were involved in drug distribution and some of whom were being prosecuted in federal court. Temple also stated that he had investigated a number of shooting cases in which Bursey was "involved" and that Bursey was a victim in at least one of these shootings. Finally, Temple testified that on one occasion when he stopped Bursey, Bursey identified himself as a member of the Black Gangster Disciples. Temple concluded by saying that all of these contacts combined led him to believe that Bursey was "street smart." Defense counsel did not offer any further objection during this testimony.

Bursey later testified that he was not the man Temple saw and that he had spent the entire day in the home of Quillia Gould. Ms. Gould testified that she saw Bursey at her home at 12:30 p.m. and again at 5:00 p.m., but she could not account for his whereabouts during the intervening hours. Bursey also testified that he had never sold crack cocaine and that there were other kids in the neighborhood who looked like him. Bursey was 18 years old at the time of the incident.

## II.

■ On appeal Bursey challenges only Officer Temple's testimony in response to the government's inquiry into why he believed Bursey was "street smart." Bursey claims that 1) the testimony was inadmissible hearsay; 2) it was unduly prejudicial; and 3) at a minimum, a limiting instruction should have been given regarding the testimony.

■ We review a district court's admission of evidence under an abuse of discretion standard. *United States v. Henderson*, 58 F.3d 1145, 1150 (7th Cir.1995). "Hearsay" under Rule 801 "is a statement, other than one made by the declarant while testifying at

ous contacts with Officer Temple. He acknowledged that he had earlier said there were 20 prior contacts, but stated that if there were 20 he no longer remembered all of them.

the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801. Temple's testimony about his personal observations of and encounters with Bursey during his police work do not qualify as out-of-court "statements" under the hearsay rules. What he saw during these episodes involved neither "(1) an oral or written assertion or (2) nonverbal conduct of a person ... intended by the person as an assertion." *Id.*

■ Furthermore, statements that are offered not to prove "the truth of the matter asserted," but for some other legitimate purpose, do not qualify as hearsay. *Id.; United States v. Robinzine,* 80 F.3d 246, 252 (7th Cir.1996). The context of the government's "street smart" question reveals that it was asked in order to understand the basis for Officer Temple's conclusion—elicited during defense counsel's cross-examination—that Bursey was "street smart." The Court concluded that defense counsel had opened the door to this inquiry by bringing up the issue. We cannot conclude that the trial court abused its discretion by allowing questioning on the factual basis of Temple's opinion, although the Rules of Evidence do not simply evaporate when one party "opens the door on an issue." *Cf. United States v. Haywood,* 70 F.3d 507, 510 (7th Cir.1995) (affirming finding that party had "opened the door"). In this case, however, the potential evidentiary problem with Temple's damaging testimony was not its "hearsay" nature. Because the testimony was offered not for its "truth value," but for a distinct and legitimate purpose, i.e., to establish the basis for Officer Temple's conclusion that Bursey was "street smart," the testimony was not hearsay.[3] *Id.*

■ Bursey also claims that the "street smart" testimony consisted of inadmissible "prior bad acts" testimony under Rules 403 and 404(b).[4] FED. R. EVID. 403, 404(b). Admission of such testimony is appropriate under these Rules if:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury's finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Tylkowski,* 9 F.3d 1255, 1261 (7th Cir.1993) (quoting *United States v. Zapata,* 871 F.2d 616, 620 (7th Cir.1989)). Bursey did not make either objection at trial, however, so we evaluate his claims under the plain error standard. *United States v. Penny,* 60 F.3d 1257, 1264 (7th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996). Under this standard Bursey must demonstrate "that there was error, that the error was plain, that the error affected his substantial rights, and that the error seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Id.* (citing *United States v. Olano,* 507 U.S. 725, 730–37, 113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993)) (other citations omitted). Because Bursey makes no argument regarding the second and third *Tylkowski* factors, we assume that he concedes these factors were met, and we do not address them further.

---

3. Defense counsel could have requested the trial court to admonish the jury that the testimony was being offered only for the limited purpose of establishing the basis of Temple's inference that Bursey was street smart. The trial court's instruction to the jury during Officer Temple's initial testimony regarding "custodial contacts"—that the testimony was being admitted only as evidence of Temple's knowledge of the defendant and that it could not be considered as demonstrating any sort of criminal propensity on the part of the defendant—strongly suggests that the trial court would have provided such an admonition if requested to do so.

4. Under Rule 403, relevant evidence can be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Under Rule 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

As noted earlier, the challenged testimony was elicited in response to a specific question about why Officer Temple thought Bursey was "street smart." The district court's ruling that the defense had opened the door on this issue reveals that the evidence was admitted for the purpose of probing the factual basis of Temple's opinion. Thus the evidence was properly directed toward a matter in issue other than Bursey's propensity to commit crimes. Parts of this testimony were also highly relevant to the major issue in dispute at trial: whether Bursey was the person observed by Temple dropping a package of crack cocaine on that August afternoon. Temple's "street smart" testimony further substantiated his testimony on direct about his previous personal contacts with Bursey. Rule 404(b) specifically provides that evidence of prior crimes may be admissible for the purpose of "identity"; and Temple's contacts with Bursey while investigating certain shootings and when he stopped him on the street are highly probative regarding Temple's ability to accurately identify Bursey.

■ Bursey's Rule 403 argument that at least some parts of Temple's "street smart" testimony were substantially more prejudicial than probative is probably his strongest argument. Temple's testimony about how Bursey was "involved in" certain shootings and that Bursey had once identified himself as a gang member, as well as Temple's vague statements about how the police department had received information about Bursey being involved in drug dealing and his membership in a group whose members included drug dealers who were being federally prosecuted—when the state could produce no direct evidence of any previous connection between Bursey and drug selling—could well be found by a district court to be unfairly prejudicial under Rule 403. Bursey's counsel never objected under Rule 403, however, and we cannot say that it was plain error for the court to allow the testimony. Bursey essentially argues that the testimony affected his right to a fair trial, but he has provided no specific argument how any potential error in allowing the testimony "seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Penny*, 60 F.3d at 1264 (citing *Olano*, 507 U.S. at 732–37, 113 S.Ct. at 1776–79). We find that it did not. The main issue at trial was whether the man that Officer Temple saw dropping the crack cocaine was indeed Trance Bursey. The evidence was undisputed that Temple was very familiar with Bursey's appearance at the time and knew him by name. Bursey himself acknowledged more than six (and perhaps as many as 20) prior contacts with Officer Temple. With this powerful evidence of Temple's ability to accurately recognize Bursey, we cannot say that any unduly prejudicial remarks made by Temple seriously affected the fairness or integrity of the trial, particularly when it was Bursey's own counsel who brought up the "street smart" theme. Thus we conclude that it was not plain error to allow the testimony, and the district court did not abuse its discretion in doing so.

■ Finally, Bursey challenges the district court's failure to give a limiting instruction to the jury explaining the limited purposes for which the evidence was admitted. Bursey's counsel did not propose any such limiting instruction, however, and he specifically consented to all of the instructions offered by the court. Thus we review his jury instruction challenge for plain error only. *United States v. Baker*, 78 F.3d 1241, 1246 (7th Cir.1996) (citation omitted). We find that for the same reasons that it was not plain error for the court to allow the "street smart" testimony, it was not plain error for the court to fail to give a limiting instruction on the testimony.

For the foregoing reasons, Bursey's conviction is

AFFIRMED.