**FOX VALLEY CONSTRUCTION WORKERS FRINGE BENEFIT FUNDS, Plaintiff–Appellee,**

**v.**

**PRIDE OF THE FOX MASONRY AND EXPERT RESTORATIONS, Defendant,**

Appeal of Richard H. BALOG, Appellant.

No. 96–2273.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 14, 1997.

Decided March 20, 1998.

Order Resolving Sanctions May 8, 1998.

Harry S. Miller, Chicago, IL; Bernard M. Baum, Catherine Chapman, Brian C. Hlavin, Stephen J. Rosenblat, Laura M. Finnegan (argued), Baum, Sigman, Auerbach, Pierson & Neuman, Chicago, IL, For Plaintiff–Appellee.

Richard H. Balog (argued), St. Charles, IL, for Appellant.

Before WOOD, JR., KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Attorney Richard H. Balog of St. Charles, Illinois and his client Michael Hoge have engaged in a course of legal maneuvering designed to dodge the authority of the courts and the legal rights of their adversaries. What started out as a simple suit to recover unpaid retirement contributions from Hoge's restoration company has turned into a nearly unending odyssey through the district court, the bankruptcy court, and this Court (three times). It is time for this frivolous conduct to end. We repeat here the relevant findings of fact of the district court.

Nearly four years ago, Fox Valley Laborers Fringe Benefit Funds and Fox Valley Construction Workers Fringe Benefit Funds (collectively "Fox Valley") sued to recover delinquent contributions from Pride of the Fox Masonry and Expert Restorations ("Pride of the Fox"). After Pride of the Fox did not appear or answer the claim of Fox Valley, the district court on August 12, 1994 entered a default judgment on behalf of Fox Valley.

Pride of the Fox moved to vacate the default judgment based on improper service. Balog filed a motion to that effect, but he did not file an appearance with the clerk of the court as required by N.D. Ill. R. 3.14 ("Local Rule 3.14"). The district court scheduled a hearing on the motion to vacate the default judgment, but Balog did not attend that hearing. Attorney Howard Levy, an associate of Balog, showed up instead, also without having entered a Rule 3.14 appearance. The district court continued the motion and ordered Balog to appear personally.

Meanwhile, Balog prepared Articles of Incorporation for Tri–State Masonry with himself as registered agent and Michael Hoge as president and sole shareholder. Hoge was already president and sole shareholder of Pride of the Fox. Even before receiving a certificate of incorporation, Hoge began operating Tri–State Masonry using equipment belonging to Pride of the Fox. Tri–State Masonry also used Pride of the Fox's em-

ployees and telephone number, and Tri–State Masonry began work on a brick wall that Pride of the Fox had contracted to restore. Tri–State Masonry was not formally incorporated until well after the events just described, and Pride of the Fox was still a viable corporation.

Balog did attend the rescheduled hearing on the motion to vacate the default judgment, still having entered no appearance. Pride of the Fox argued that it was never properly served with process. (This dispute over service of process continued in an unseemly fashion even at oral argument before this Court.) Fox Valley had attempted to serve Pride of the Fox through its registered agent and lawyer, Balog. Balog claimed in a sworn affidavit that service was improper because the process server broke into Balog's private office through a locked door. Balog shouted at the process server to leave and called the police. The process server left the papers on Balog's secretary's desk and left.

The district court found that Balog's version of the service of process story was incredible and denied Pride of the Fox's motion to vacate the default judgment. Balog admitted that the door had not been locked but only shut. The district court affirmatively found that "Balog not only attempted to evade service (an action that must be characterized as highly unprofessional under the circumstances disclosed by the testimony), but then he also affirmatively sought to mislead this Court though the filing of a false affidavit." *Fox Valley Laborers Fringe Benefit Funds v. Pride of Fox Masonry and Expert Restorations*, No. 94 C 4289, 1996 WL 137654 at *9 (N.D.Ill. March 25, 1996).

Fox Valley then pursued collection on the default judgment through the Illinois mechanism of a citation to discover assets. Fox Valley tried to serve the citation to discover assets on Pride of the Fox's registered agent and attorney, Balog. This time, finding Balog not at his office the process server served Balog's secretary. The citation directed the president of Pride of the Fox, Michael Hoge, to appear in court to testify as to Pride of the

Fox's assets, but Hoge never appeared. The citation also provides:

> YOU ARE PROHIBITED, as of the date upon which this Citation was served upon you, from making or allowing any transfer or other disposition of, or interference with, any property not exempt from execution or garnishment belonging to the judgment debtor or to which it may be entitled or which may be acquired by or become due to it and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to it, until the further order of Court or termination of the proceedings. You may be held personally accountable should you violate this injunction.

Citation to Discover Assets, *Fox Valley Laborers Fringe Benefit Funds v. Pride of the Fox Masonry and Expert Restorations*, No. 94 C 4289 (N.D.Ill. Sept. 22, 1994).

Fox Valley filed a motion to show cause why Pride of the Fox and Michael Hoge should not be held in contempt for failure to comply with the citation to discover assets. The district court granted the motion. The court set a hearing date of December 19, 1994 to decide whether to hold Pride of the Fox and Hoge in contempt for the discovery violation, but on December 9, 1994, Pride of the Fox filed for Chapter 7 bankruptcy protection. The district court decided that the automatic stay protected Pride of the Fox, and it suspended prosecution of the contempt citation against Pride of the Fox. Hoge continued to operate the same restoration business, however, as Tri–State Masonry.

Having discovered that Pride of the Fox was essentially doing business as Tri–State Masonry, Fox Valley moved the court for sanctions against Balog and Hoge individually. Balog responded on February 15, 1995 by filing a notice of appeal on behalf of Pride of the Fox (without authorization from the bankruptcy trustee).[1] Fox Valley moved the district court again for sanctions against Balog personally, and on March 6, 1995 Balog responded by filing another notice of appeal on behalf of himself and Hoge personally and Pride of the Fox.[2] This Court dismissed

---

1. Docketed in this Court as Cause No. 95–1508.

2. Docketed in this Court as Cause No. 95–1579.

both appeals on July 17, 1995 for lack of jurisdiction because no final order had been issued by the district court.

After the "appeals," the district court determined that it had jurisdiction over Hoge and Balog personally as non-bankrupt third parties and that the automatic stay protecting Pride of the Fox did not extend to them. The district court ordered Balog and Hoge to file a response to Fox Valley's motion for sanctions, but instead Balog and Hoge filed a notice of appeal to this Court.[3] We dismissed the "appeal" on April 18, 1997 for lack of jurisdiction.

In the meantime, the district court had scheduled an evidentiary hearing on the motion for sanctions against Hoge and Balog. Balog's associate Levy came to court on their behalf (but without filing an appearance), arguing that Hoge and Balog were not present because they had no formal notice of the hearing. They had no formal notice, of course, because Balog still had filed no Rule 3.14 appearance and the clerk's office had no record of who he was. Somehow, though, Balog and Hoge knew about the hearing because Levy was sent on their behalf.

The district court rescheduled the evidentiary hearing. Balog showed up, but Hoge did not, despite the fact that he was to give testimony. The court heard testimony from other witnesses and rescheduled the hearing yet again so that Hoge might testify. Hoge appeared at this third hearing and testified.

On May 13, 1996, the district court found that Hoge had violated the citation to discover assets by transferring those assets from Pride of the Fox to Tri–State Masonry. Furthermore, the court found that Hoge had acted knowing that his actions were improper and violative of the citation. Accordingly, the district court imposed the statutory penalty allowed by Illinois law for violation of such a citation—personal liability for the full amount of Pride of the Fox's assets as of the date of the citation. That is, the court held that since Hoge had violated the citation by transferring assets, he would be liable for the amount of Pride of the Fox's assets should Pride of the Fox come up short. The court further ordered that any work done by Hoge or Tri–State Masonry since the date of the citation would be subject to levy to satisfy Fox Valley's judgment against Pride of the Fox. The district court limited the full amount of Hoge's liability to the amount of Fox Valley's original judgment against Pride of the Fox.

As to Balog, the court found that he unreasonably, vexatiously, and in objective bad faith multiplied the proceedings in violation of 28 U.S.C. § 1927. The court found him liable for Fox Valley's costs, expenses, and attorneys' fees since the date that Fox Valley first initiated enforcement proceedings to recover on the default judgment entered against Pride of the Fox (August 12, 1994). The court ordered Balog to pay $25,286.49 in attorneys' fees, costs, and expenses directly to Fox Valley, and Hoge to pay $900 to Fox Valley and $333.75 to Fox Valley's lawyers for not appearing to testify at the second scheduled evidentiary hearing. The court has not yet ordered Hoge to pay anything to Fox Valley representing Pride of the Fox's indebtedness on the judgment but has only determined that Hoge could be personally liable for the amount of Pride of the Fox's assets on the date of the citation. The court also forwarded a copy of its opinion to the Illinois Attorney Registration and Disciplinary Commission for its consideration. Balog appeals the sanctions.[4]

## A.  Whether the Automatic Stay Deprived the District Court of Jurisdiction

After Pride of the Fox filed for bankruptcy, the district court (not the bankruptcy court) heard a Motion for Sanctions against Hoge and Balog personally. Balog argues

---

3.  Docketed in this Court as Cause No. 96–1855.

4.  As indicated, sanctions were imposed against both Balog and Hoge by the district judge on May 13, 1996. Balog filed his pro se notice of appeal from that May 13th judgment order on May 21, 1996. This appeal was assigned docket number 96–2273. No notice of appeal from the May 13th judgment order was filed on behalf of Hoge. Notwithstanding that the sanctions order against Hoge is not a part of this appeal, Balog has used much of his brief and oral argument addressing the ruling against Hoge. This obfuscating conduct aside, the sanctions against Hoge are not subject to appellate review.

that the district court had no jurisdiction to hear that motion because Pride of the Fox's bankruptcy filing automatically stayed all proceedings against Pride of the Fox.

The automatic stay is indeed a powerful tool of the bankruptcy courts.[5] On the filing of a bankruptcy petition, the stay automatically stops any other proceedings against the debtor. "The purpose of this section ... is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors...." *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 998 (4th Cir.1986). The stay, however, protects only the debtor, unless the debtor and some third party have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy. *See id.* at 999, 1001. The automatic stay does not touch proceedings to enforce a court order against non-bankrupt third parties. *See Supporters to Oppose Pollution v. Heritage Group*, 973 F.2d 1320, 1328 (7th Cir.1992). The question here is whether the stay extends to Balog personally, and we quickly dispose of any argument that the automatic stay deprived the district court of jurisdiction to sanction him. Balog has no financial or ownership relationship with Pride of the Fox. He merely serves as the registered agent and attorney for that corporation. Balog's specious argument that the automatic stay protects his personal assets hardly merits the brief discussion we have given it.

### B. Whether Sanctions Against Balog Were Warranted

Balog argues at great length that the court was unjustified in sanctioning him. The district court found that Balog had "vexatiously and unreasonably" multiplied the proceedings in violation, of 28 U.S.C. § 1927,[6] *see Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir.1992). The district court determined that Balog engaged in: evading service of process, giving untrue sworn testimony in his affidavit regarding service of process, failing to file an appearance, filing baseless appeals with the intent to delay the proceedings, incorporating Tri–State Masonry in an attempt to keep Pride of the Fox from having to pay its debts, and seeking shelter of bankruptcy for Pride of the Fox to attempt to avoid a contempt proceeding. The district court specifically found that Balog did all these things in subjective *and* objective bad faith, and vexatiously and unreasonably, based on evidence presented at the evidentiary hearing and Balog's belligerent attitude at court appearances. We review the district court's decision for abuse of discretion. *See Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994).

We fail to find any abuse of discretion here. Cases from our Court interpreting § 1927 show that before sanctions attach, a lawyer must act "vexatiously and unreasonably" and in subjective or objective bad faith. *See Kotsilieris*, 966 F.2d at 1184. Balog bases his argument that the district court abused its discretion on the fact that he has not acted "illegally," that he did not counsel Hoge to act illegally, and that he is not an owner or officer of any of the corporations

---

5. That section provides in relevant part:

> [A] petition filed under ... this title ... operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, or a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> ....
> (3) any act to obtain possession of property of the estate or of property from the estate or

> to exercise control over property of the estate....

11 U.S.C. § 362.

6. Section 1927 reads:

> Any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

involved. But these facts do not address whether Balog multiplied the proceedings. Rather, the facts we listed above detail how Balog multiplied the proceedings. Balog has not persuaded us that the district court abused its discretion in finding that he violated § 1927.

Balog also argues that the district court erroneously admitted evidence of Balog's similar sharp practices during his representation of one of Hoge's earlier corporations. Evidentiary rulings are reviewed for abuse of discretion. *See Eastern Natural Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 1001 (7th Cir.1997). The judge admitted the evidence under Fed.R.Evid. 404(b) because it shows strikingly similar sharp practices in a similar lawsuit and it bears directly on Balog's knowledge and intent.

Evidence can be admitted under Rule 404(b) if (1) it tends to show something other than propensity to commit the act in question; (2) it bears enough resemblance and proximity in time to the act in question to be relevant; (3) a jury could find that the party in question committed the prior act; and (4) the prejudicial effect of the evidence does not outweigh its probative value. *See, e.g., United States v. Bursey*, 85 F.3d 293, 297 (7th Cir.1996); *Harris v. Davis*, 874 F.2d 461, 464 (7th Cir.1989). Although the district court did not engage in a formal application of the test part by part, the decision to admit the evidence was not erroneous. Other than propensity, the evidence showed Balog's intent to delay the proceedings as he had successfully done in the prior suit of five years ago. Balog's tactics were nearly identical to those seen in this suit and included evading service of process and failing to file an appearance. Counsel for Fox Valley showed Balog's behavior in the prior suit via testimony, correspondence, and court documents—while Balog's testimony was unilluminating, the documents at least were reliable and very telling. And the effect of the evidence by its nature was prejudicial to Balog, but not unduly or unfairly. The evidence was simply harmful to his case, and the prejudice was well outweighed by its probative value. We see no reason to disturb the district court's decision.

Balog also argues that the amount of sanctions is excessive. We review the determination of the amount of § 1927 sanctions for abuse of discretion. *See Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988). Balog argues that the district court should have separated out what was caused by Balog's vexatious behavior and what was not. True, but the district court took this task on as best it could. The district court said it was "impossible" to separate entirely what costs would have been incurred had Balog not engaged in vexatious legal practice, but based on the specificity with which the district court reviewed Fox Valley's legal bills, we are satisfied that the district court separated expenses as well as possible. Indeed, the district court reduced its original award by more than $1000 because of valid points Balog raised regarding excessive billing or lack of detail on Fox Valley's billing records. In the face of such painstaking effort at accuracy, we find no abuse of discretion.

Balog's final argument is that the court failed to take into account his ability to pay. While district courts may take into account an attorney's ability to pay, see *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1496 (7th Cir.1989), they are not bound to do so. Especially in a case like Balog's, where the sanctions were tailored as well as possible to compensate the other party for time lost to Balog's antics, we will not require the court to consider Balog's ability to pay.

For all the foregoing reasons, we AFFIRM the district court's order of sanctions against Richard H. Balog. A copy of this opinion is being forwarded to the Illinois Attorney Registration and Disciplinary Commission.

Richard H. Balog is ORDERED to show cause within thirty days why his name should not be stricken from the roll of attorneys admitted to practice before the United States Court of Appeals for the Seventh Circuit; and he is further ORDERED to show cause why he should not be sanctioned under Fed. R.App. P. 38 and 7th Cir. R. 38 for his conduct in pursuing this appeal and the "ap-

peals" in Cause Nos. 95–1508, 95–1579, and 96–1855.

### ORDER

The Appellant Richard H. Balog has filed his response to the show cause order previously issued in this case. In consideration of the factors outlined in his response, we find that the published opinion issued in this matter, the referral of our decision to the Illinois Attorney Registration and Disciplinary Commission, together with the sanctions imposed by the district court are sufficient, and no further sanctions need be imposed pursuant to Fed.R.App.P. 38 and 7th Cir.R. 38. The Appellant's name may remain on the roll of attorneys authorized to practice before this Court, subject, however, to any adverse ruling by the Illinois Attorney Registration and Disciplinary Commission.