955 N.E.2d 215 (2011)
In re the Order of Contempt Against Craig BENSON,
Martinsville Depot, Inc., and SBS Enterprises, Inc., Appellants-Petitioners,
v.
Co-Alliance, LLP, Appellee-Respondent.
No. 55A04-1010-CC-646.
Court of Appeals of Indiana.
September 6, 2011.
*216 Thomas D. Collignon, Collignon & Dietrick, P.C., Indianapolis, IN, Attorney for Appellant, Craig Benson.
James W. Hehner, Pamela K. Bennett, Hehner & Associates, Indianapolis, IN, Attorneys for Appellee.

OPINION
BARNES, Judge.

Case Summary
Craig R. Benson appeals the trial court's order finding him in contempt. We affirm.

Issues
Benson raises two issues, which we restate as:
I. whether the trial court properly denied his motion to dismiss the contempt petition; and
II. whether the trial court had jurisdiction to order him to pay $75,000 to the Morgan County Clerk.

Facts
In May 2009, Co-Alliance, LLP, ("Co-Alliance") filed a complaint against Martinsville Depot, Inc., ("Depot") alleging that Depot owed Co-Alliance $223,023.92 for fuel that Co-Alliance had provided to Depot. In August 2009, Co-Alliance amended its complaint to add claims against SBS Enterprises, Inc., ("SBS"). Depot and SBS (collectively, "Defendants") were represented by attorney Benson.
In December 2009, Co-Alliance filed a motion for a hearing on prejudgment attachment. Co-Alliance alleged that Depot was contemplating a sale of its tangible assets and an assignment of its lease and that Depot intended to use the proceeds of the sale to pay off debtors other than Co-Alliance. Co-Alliance requested that the trial court grant prejudgment attachment of the proceeds of any sale pursuant to Indiana Code Section 34-25-2-1. On January 7, 2010, the trial court issued an order scheduling a hearing on Co-Alliance's motion for February 22, 2010, and ordering that "if Defendants sell a portion of their tangible assets prior to the above hearing, that proceeds from the sale of those tangible assets not be distributed and are to be held until the Court holds its hearing and makes its decision as to what should occur from the proceeds of the sale." Appellant's App. p. 29.
A sale occurred on February 11, 2010, and the proceeds were deposited into Benson's escrow account. However, on that same day, Benson wrote a check for $899.85 to the sale buyers for adjusted expenses. Per his clients' instructions, Benson then distributed funds from the sale proceeds to creditors of Depot and SBS on February 17, 2010, as follows: (1) $13,217.08 to Buyer's Wholesale; (2) $1,653.39 to Forguites and Forguites; and (3) $6,906.51 to Wabash Wholesale.
At the February 22nd hearing, the trial court reaffirmed that the prior orders would "remain in place." Id. at 5. After the hearing, Benson, on behalf of the Defendants, filed a motion for partial relief. Defendants requested that the trial court allow the partial distribution of proceeds from the sale to certain creditors, including two utilities, an accountant, two vendors, and $24,150.00 in legal fees owed to Benson. Benson did not mention that he had already distributed some of the proceeds of the sale. On March 4, 2010, the trial court denied the motion for partial relief.
On March 22, 2010, Co-Alliance filed a motion for an accounting, seeking details *217 of the sale, purchaser(s), and the current location of the funds. The trial court granted the motion for an accounting and ordered Defendants to produce information regarding the sale, including the date of the sale, the proceeds of the sale, name and address of the purchaser, banks or other financial institutions where said funds are on deposit, the current balance of said accounts, and copies of all statements or ledgers for such accounts. On April 8, 2010, on behalf of Defendants, Benson responded that the assets were sold on February 11, 2010, for $75,000 and that the "funds were deposited into attorney's escrow account." Appellee's App. p. 24.
The trial court held a hearing regarding the prejudgment attachment on June 14, 2010. On June 18, 2010, the trial court granted Co-Alliance's motion for the prejudgment attachment and ordered that "full proceeds from the sale by the Defendants to a third party shall be provided to the Morgan County Clerk's Office" within ten days of the date of the order. Appellant's App. p. 33.
Benson did not forward any of the funds to the Morgan County Clerk's office. Again, per his clients' instructions, Benson distributed the additional funds on June 25, 2010 as follows: (1) $38,006.58 to himself for attorney fees owed; and (2) $14,316.51 to the Morgan County Sheriff's Department for tax delinquencies. At that time, $75,000 had been distributed.
On June 27, 2010, SBS filed for protection under Chapter 7 of the United States Bankruptcy Code. On June 28, 2010, Depot also filed for protection under Chapter 7 of the United States Bankruptcy Code. Both SBS and Depot claimed to have no assets and no property that had been attached, garnished, or seized under any legal process during the year prior to the bankruptcy filing. Benson represented both SBS and Depot in the bankruptcy proceedings. On July 13, 2010, the trial court stayed proceedings against SBS and Depot pursuant to the automatic stay provisions of the bankruptcy code.
On August 11, 2010, Co-Alliance filed an unverified motion for contempt against Benson. Co-Alliance alleged that Benson had distributed the proceeds of the sale in violation of the trial court's orders. The trial court issued an order to show cause and set the matter for hearing on September 20, 2010. The trial court ordered Benson to produce materials fifteen days before the hearing, including documentation of the distributions from his escrow account related to the sale proceeds. Benson filed a motion for an indefinite continuance of the hearing, but the trial court rescheduled the hearing for September 27, 2010.
On September 23, 2010, Benson filed a motion to dismiss the contempt proceedings because the motion for contempt was not "verified" as required by Indiana Code Section 34-47-3-5. Appellant's App. p. 62. Co-Alliance responded by filing an amended verified motion for contempt on the day of the hearing, September 27, 2010. The amended verified motion made the same allegations and was almost identical to the original unverified motion, except that it also alleged that Co-Alliance had discovered the "overall purchase price paid" to Depot, SBS, Steve Fordyce, and Garry's Service Center, Inc., was $200,000, and not $75,000 as originally alleged by Benson as counsel for Defendants. Appellee's App. p. 67.
At the September 27, 2010, hearing, the trial court and the parties discussed whether they were proceeding on the initial motion for contempt or the amended motion for contempt. The trial court was concerned that the amended motion raised new issues and that Benson did not have *218 sufficient notice of those new issues. Consequently, they proceeded on the issues raised only in the original motion. Benson also briefly argued that, although the contempt issue and attorney fee remedy could go forward, the trial court "may not have subject matter jurisdiction over" the payment of $75,000 to the trial court. Tr. Sept. 27, 2010 Hr. p. 11. The trial court rejected Benson's subject matter jurisdiction argument.
Benson testified at the hearing that $75,000 was paid to Depot and SBS on February 11, 2010, for the sale and that the $75,000 was placed in his escrow account. He also testified regarding his distributions of the $75,000 from the escrow account and that he was aware of the trial court's prior order regarding distribution of the $75,000.
At the parties' request, the trial court issued findings of fact and conclusions thereon on September 27, 2010. The trial court found that Benson's actions of distributing the funds in February 2010 "willfully and purposely violated the court order from January 7, 2010 and the filing of the `Motion for Partial Relief' thereafter by Craig Benson was a deliberate attempt to justify an improper action that he had already taken." Appellant's App. p. 15. The trial court further found that Benson's actions of distributing the remaining funds in June 2010 "were in direct violation of the court order and show again a willful and intentional act to defy the orders of this court." Id. at 17. The trial court concluded that Benson was in contempt of the court's orders. The trial court ordered as follows:
80) That Craig Benson has failed to forward the $75,000 to the Morgan County Clerk and shall be imprisoned in the Morgan County Jail immediately until such sum has been remitted by him to the Morgan County Clerk.
81) That he shall be sentenced to a term of 150 days, which equates to $500.00 per day.
82) That he shall be given the keys to this term of imprisonment in that for every $500.00 that is remitted by him to the Morgan County Clerk's Office, one (1) day of imprisonment shall be reduced from the total of 150 days.
83) That there was testimony that up to $10,000.00 from the $75,000 may have been returned from the Morgan County Sheriff's Department and forwarded to the bankruptcy court. Therefore, when this is proven, the proper amount of days will be removed from Craig Benson's sentence as satisfaction of this order above.
84) That Craig Benson shall owe attorney fees in this matter as his actions have required the plaintiff's [sic] in this action to expend funds and resources to bring this contempt, to discover evidence that he did not forward to them and to conduct the contempt hearing.
Id. at 19. Benson later paid the $75,000 to the trial court clerk.
In November 2010, the trial court held a hearing regarding attorney fees owed by Benson to Co-Alliance pursuant to the contempt order. At that hearing, Benson again raised the fact that the original motion for contempt was unverified and renewed his motion to dismiss. The trial court noted that the amended motion contained the same allegations, with the exception of an additional allegation, that the amended motion was verified, and that the additional allegation was not considered at the hearing. The trial court denied the renewed motion to dismiss and then ordered *219 Benson to pay $12,354.00 in attorney fees to Co-Alliance. The trial court stayed the order until completion of this appeal. Benson now appeals the September 27, 2010 contempt order.
In December 2010, Co-Alliance filed another motion for contempt against Benson, and the trial court set the matter for hearing on March 14, 2011. Also in December 2010, the trial court received an "Order on Motion for Turnover" by the bankruptcy trustee. Id. at 79. The trial court then ordered that the Morgan County Clerk "remit to the trustee all sums on deposit received by the Clerk from Craig Benson as a result of the court's contempt order of September 27, 2010." Id. In January 2011, the bankruptcy court judge granted Depot and SBS's motion that the automatic stay be applied to Co-Alliance's new contempt proceeding against Benson. Benson and Co-Alliance filed an agreed stay of the second contempt proceeding, and the trial court, although questioning the bankruptcy court's authority to control state court contempt proceedings, granted the agreed stay of further contempt proceedings.

Analysis

I. Unverified Motion for Contempt
The first issue is whether the trial court properly denied Benson's motion to dismiss the contempt petition. According to Benson, the trial court should have granted his motion to dismiss because the contempt petition was unverified. We review de novo the trial court's grant or denial of a motion to dismiss. Caesars Riverboat Casino, LLC v. Kephart, 934 N.E.2d 1120, 1122 (Ind.2010). Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. Id.
The "willful disobedience of any process, or any order lawfully issued: (1) by any court of record, or by the proper officer of the court; (2) under the authority of law, or the direction of the court; and (3) after the process or order has been served upon the person" is indirect contempt of court. Ind.Code § 34-47-3-1. Indiana Code Section 34-47-3-5 addresses indirect civil contempt and provides:
(a) In all cases of indirect contempts, the person charged with indirect contempt is entitled:
(1) before answering the charge; or
(2) being punished for the contempt;
(3) to be served with a rule of the court against which the contempt was alleged to have been committed.
(b) The rule to show cause must:
(1) clearly and distinctly set forth the facts that are alleged to constitute the contempt;
(2) specify the time and place of the facts with reasonable certainty, as to inform the defendant of the nature and circumstances of the charge against the defendant; and
(3) specify a time and place at which the defendant is required to show cause, in the court, why the defendant should not be attached and punished for such contempt.
(c) The court shall, on proper showing, extend the time provided under subsection (b)(3) to give the defendant a reasonable and just opportunity to be purged of the contempt.
(d) A rule provided for under subsection (b) may not issue until the facts alleged to constitute the contempt have been:

(1) brought to the knowledge of the court by an information; and

*220 (2) duly verified by the oath of affirmation of some officers of the court or other responsible person.

(emphasis added).
The initial motion for contempt filed by Co-Alliance was not verified as required by Indiana Code Section 34-47-3-5(d)(2). However, we have held that "not every technical requirement of the indirect contempt statute must be followed, so long as the contempt defendant's due process rights are respected." In re Contempt of Wabash Valley Hosp., Inc., 827 N.E.2d 50, 63 (Ind.Ct.App.2005); cf. Indiana Bureau of Motor Vehicles v. Charles, 919 N.E.2d 114, 118 (Ind.Ct.App.2009) (holding that, because the petition lacked verification by oath, it failed to meet the statutory requirements and could not serve as a basis for a rule to show cause).
Benson does not mention in his appellant's brief that Co-Alliance filed an amended petition that was properly verified before the contempt hearing. Co-Alliance points out that, after Benson filed his motion to dismiss, Co-Alliance corrected its error and filed an amended verified motion.
At the hearing, there was a lengthy discussion among the trial court and attorneys regarding the original motion and amended motion. The amended motion made the same allegations as the original one with the exception of a new allegation regarding Benson's representations as to the amount of proceeds from the sale. The trial court and parties agreed that the new allegation would not be considered at the hearing. However, there was a back and forth discussion about whether the trial court would be ruling on the original motion or the amended motion. Ultimately, the trial court and attorneys appeared to have decided that the original motion would be considered by the trial court.
Even if the trial court erred by proceeding on the original motion, we conclude that any error did not affect Benson's substantial rights. Indiana Trial Rule 61 provides:
No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.
"The essential purpose of a verification is that the statements be made under penalty or perjury." Austin v. Sanders, 492 N.E.2d 8, 9 (Ind.1986). As a result of the amended contempt motion, the trial court had before it almost identical verified allegations against Benson, and the essential purpose of the verification requirement was satisfied. We cannot say that any error in the verification process affected Benson's substantial rights.[1]See Mariga v. Flint, 822 N.E.2d 620, 632-33 (Ind.Ct. App.2005) (holding that the failure to properly caption and verify a petition did not *221 affect the substantial rights of the parties), trans. denied; Wabash Valley Hosp., 827 N.E.2d at 63 n. 14 (holding that the hospital failed to show how it was harmed by failure to verify the rule to show cause). We decline to reverse the trial court's denial of Benson's motion to dismiss on this basis.

II. Jurisdiction
Next, Benson argues that the trial court lacked subject matter jurisdiction to order the payment of $75,000 for contempt when the bankruptcy court had previously stayed the proceedings. According to Benson, the contempt proceedings were "an attempt to circumvent the automatic bankruptcy stay...." Appellant's Br. p. 14. At the trial court level, Benson only briefly raised this issue during the September 2010 contempt hearing. He argued that, although the contempt issue and attorney fee remedy could go forward, the trial court "may not have subject matter jurisdiction over" the payment of $75,000 to the trial court clerk. Tr. Sept. 27, 2010 Hr. p. 11. The trial court rejected his argument. On appeal, Benson again argues that the trial court did not have jurisdiction to order the payment of the $75,000 because it was "property of the estate" subject to the bankruptcy court's jurisdiction. Appellant's Reply Br. p. 7. Benson does not appear to dispute the trial court's subject matter jurisdiction regarding the contempt proceedings and the award of attorney fees.
The filing of a bankruptcy petition operates as an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate...." 11 U.S.C. § 362. The bankruptcy court has exclusive jurisdiction over property of the debtor's bankruptcy estate. 28 U.S.C. § 1334(e)(1). "[C]ourts have uniformly held that when a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (i.e., stays) the proceedings." Chao v. Hosp. Staffing Services, Inc., 270 F.3d 374, 384 (6th Cir.2001). "Assuming its jurisdiction is otherwise sound, the non-bankruptcy court may enter orders not inconsistent with the terms of the stay and any orders entered by the bankruptcy court respecting the stay." Id. "If, for example, the suit before the [non-bankruptcy court] may proceed because an exception to the automatic stay authorizes prosecution of the suit, the [non-bankruptcy court] may enter needful orders not themselves inconsistent with the automatic stay." Id. However, "[i]f the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void ab initio." Id. "If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause." Id.
According to Benson, the trial court could not order him to pay $75,000 because it was "property of the estate" subject to the bankruptcy court's jurisdiction. Appellant's Reply Br. p. 7. We disagree. Benson improperly characterizes the $75,000 as proceeds from the Defendants' sale and property of the bankruptcy estate. The $75,000 that the trial court ordered Benson to pay was his personal money and was damages resulting from his contempt. Our supreme court has held that "[c]ontempt is for the benefit of the *222 party who has been injured or damaged by the failure of another to conform to a court order issued for the private benefit of the aggrieved party." Cowart v. White, 711 N.E.2d 523, 530 (Ind.1999), clarified on reh'g, 716 N.E.2d 401 (Ind.1999). "Once a party has been found in contempt, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt." Id. at 532. The damages resulted because Benson distributed funds in violation of the trial court's orders and was less than forthcoming in his accounting to the trial court. As a result of Benson's conduct, the funds from the sale that were subject to prejudgment attachment were unavailable to Co-Alliance. Benson cites no authority for the proposition that the trial court could not require him to pay $75,000 to the Morgan County Clerk as part of the monetary damages resulting from his contempt.
Co-Alliance cites Fox Valley Construction Workers Fringe Benefit Funds v. Pride of the Fox Masonry, 140 F.3d 661 (7th Cir.1998), which we find relevant here. In Fox Valley, a retirement fund sued Pride of the Fox Masonry to recover delinquent contributions. Pride of the Fox's president, Michael Hoge, and its attorney, Richard Balog, then engaged in a series of actions designed to delay the proceedings and transfer assets from Pride of the Fox. Pride of the Fox then filed for Chapter 7 bankruptcy protection.
The retirement fund then moved for sanctions against Hoge and Balog personally for their actions. The district court determined that it had jurisdiction over Hoge and Balog as non-bankrupt third parties and that the automatic stay did not protect them. Ultimately, the district court found that Hoge had violated a court order by transferring assets and ordered that he would be liable for the amount of assets if necessary. As for the attorney, Balog, the district court found that he had acted in bad faith and ordered him to pay the retirement fund's attorney fees pursuant to 28 U.S.C. § 1927.
On appeal, Balog argued that, as a result of the automatic stay, the district court had no jurisdiction to consider the sanctions against him. The Seventh Circuit held:
The automatic stay is indeed a powerful tool of the bankruptcy courts. On the filing of a bankruptcy petition, the stay automatically stops any other proceedings against the debtor. "The purpose of this section ... is to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors...." A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.), 788 F.2d 994, 998 (4th Cir.1986). The stay, however, protects only the debtor, unless the debtor and some third party have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy. See id. at 999, 1001. The automatic stay does not touch proceedings to enforce a court order against non-bankrupt third parties. See Supporters to Oppose Pollution v. Heritage Group, 973 F.2d 1320, 1328 (7th Cir. 1992). The question here is whether the stay extends to Balog personally, and we quickly dispose of any argument that the automatic stay deprived the district court of jurisdiction to sanction him. Balog has no financial or ownership relationship with Pride of the Fox. He merely serves as the registered agent and attorney for that corporation. Balog's specious argument that the automatic stay protects his personal assets hardly *223 merits the brief discussion we have given it.
Fox Valley, 140 F.3d at 666. Balog also argued that the sanctions against him were unwarranted and excessive. The Seventh Circuit concluded that the district court did not abuse its discretion when it determined that Balog had "multiplied" the proceedings and that the district court did not abuse its discretion in calculating the costs caused by Balog's "vexatious behavior" pursuant to 28 U.S.C. § 1927. Id. at 666-67.
Benson argues that Fox Valley is distinguishable because of a similarity of interests between the debtors and Benson. Benson argues that he "had a sufficient financial nexus to the debtors' assets" because the "debtors' assets were in his trust account." Appellant's Reply Br. p. 8. The court in Fox Valley held that a third party would be protected by the automatic stay if there existed such "a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy." Fox Valley, 140 F.3d at 666. The assets of the debtors are not at issue here. The assets of the debtors had already been fully distributed from Benson's escrow account, and as in Fox Valley, Benson is seeking application of the automatic stay to protect his own personal assets, not those of the debtors. Ultimately, funds were returned to the bankruptcy estate here, and assets of the debtor were not jeopardized in any way.
Benson also argues that, in Fox Valley, the attorney "was not found personally liable for the corporation's assets improperly transferred to the newly formed corporation." Appellant's Reply Br. p. 9. The Seventh Circuit awarded damages based on 28 U.S.C. § 1927, which provides:
Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
Here, on the other hand, the damages were based on Benson's contempt.
"Once a party has been found in contempt of court, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt." City of Gary v. Major, 822 N.E.2d 165, 172 (Ind.2005). "In determining an amount of damages the trial court may take into account `the inconvenience and frustration suffered by the aggrieved party'" Id. (quoting Thomas v. Woollen, 255 Ind. 612, 266 N.E.2d 20, 22 (1971)). "The determination of damages in a contempt proceeding is within the trial court's discretion, and we will reverse an award of damages only if there is no evidence to support the award." Id. The award of $75,000 was within the trial court's discretion and the evidence supported the award. As Fox Valley concerned an award pursuant to 28 U.S.C. § 1927, not an award under the contempt statutes, nothing in Fox Valley prevented the trial court from ordering Benson to pay $75,000 to the Morgan County Clerk.
Finally, Benson relies on the bankruptcy court's January 2011 order granting the Defendants' motion to apply the automatic stay to the second contempt proceeding, which was filed against Benson in December 2010. Benson was found in contempt in the first contempt proceedings in September 2010, and this is the order now on appeal. We were provided with no pleadings, other than the order, related to the bankruptcy court's order, and we cannot say that the bankruptcy court's determination on the later contempt filings is relevant to the issues on appeal now. We are *224 unaware of any bankruptcy court ruling regarding the first contempt proceedings.
We conclude that the trial court properly rejected Benson's jurisdiction argument regarding the payment of the $75,000 to the Morgan County Clerk. The trial court had authority to enforce obedience of its lawful orders and to impose sanctions on attorneys violating such orders. See Noble County v. Rogers, 745 N.E.2d 194, 198-99 (Ind.2001). The funds at issue here were not subject to the bankruptcy court's jurisdiction.

Conclusion
The trial court properly denied Benson's motion to dismiss the contempt proceedings because the original motion was unverified. The trial court also properly rejected Benson's argument that it did not have jurisdiction to order him to pay $75,000 to the Morgan County Clerk. We affirm.
Affirmed.
RILEY, J., and DARDEN, J., concur.
NOTES
[1] Benson argues that the error was not harmless because Benson was ordered to produce certain documents in response to the original motion and those documents were used against him. Even if the trial court had proceeded on the amended motion and continued the hearing to give Benson additional time to prepare for the new allegation, Benson does not explain how those documents would have been unavailable to be used against him at a new hearing.