RUCKER, Justice.
A casino sued a patron for unpaid counter checks. The patron, a pathological gambler, countersued for damages because the casino knowingly enticed and encouraged the patron to gamble. We granted transfer to determine if casino patrons have a common law cause of action for damages stemming from the consequences of gambling losses.
Background
Historically, Indiana has prohibited gambling. The restrictions date back to at least 1851 when the State adopted a Constitution that contained a prohibition against lotteries thereby making various forms of gambling unlawful. Ind. Const. Art. 15 § 8 (1851); Ind. Gaming Comm'n v. Moseley, 643 N.E.2d 296, 297 (Ind.1994). The prohibition against lotteries was adopted to "minimize the harmful effects of gambling by sheltering the people from gaming enterprises promoted and operated for monetary gain...." State v. Nizon, 270 Ind. 192, 384 N.E.2d 152, 161 (1979) (declaring that parimutuel wagering on horse races was unconstitutional). Anti-gaming statutes were passed to "remove as far as possible the temptation for gam *1122 bling and prevent the evils arising therefrom." Hatton v. Casey, 93 Ind.App. 336, 178 N.E. 303, 305 (1931).
In 1988, voters approved a referendum to amend the Indiana Constitution by deleting the general prohibition against lotteries. The General Assembly then authorized lotteries conducted by the State Lottery Commission and horse race gambling in 1989. See Pub. L. No. 341-1989, 1989 Ind. Acts 2308 (special session) (codified at Ind.Code 4-30, 4-31). In 1993 riverboat gambling was authorized subject to regulation by the Indiana Gaming Commission. See Pub. L. No. 277-1993 § 124, 1993 Ind. Acts 4821 (special session) (codified at I.C. 4-33). Aside from these exceptions, gambling in this state continues to be strictly prohibited by anti-gaming laws. Schrenger v. Caesars Indiana, 825 N.E.2d 879, 883 (Ind.Ct.App.2005), trans. denied; see I.C. §§ 35-45-5-2, 35-45-5-2 (criminalizing gambling and professional gambling such as pool-selling and bookmaking); L.E. Servs., Inc. v. State Lottery Comm'n of Ind., 646 N.E.2d 334, 340 (Ind.Ct.App.1995), trans. denied (holding the offering of out-of-state lottery tickets for sale to the public strictly prohibited by Indiana's anti-gaming laws).
Facts and Procedural History
Caesars Riverboat Casino, LLC ("Caesars") operates a riverboat casino in Elizabeth, Indiana. Genevieve Kephart is a resident of Goodlettsville, Tennessee. Kephart has a pathological addiction to gambling. Caesars knew of Kephart's addiction. On March 18, 2006 Kephart trav-elled to Caesars after receiving an offer of free transportation, hotel room, food, and alcohol from Caesars. In a single night of gambling Kephart lost $125,000 through the use of six counter checks provided to her by Caesars.
The counter checks were returned to Caesars for insufficient funds. Caesars filed suit against Kephart on January 23, 2007 for payment of the checks, treble damages, and attorney fees as provided in Indiana Code section 34-24-3-1. Kephart counterclaimed on April 2, 2007 alleging that Caesars knew of Kephart's pathological addiction and took advantage of the addiction for gain. Kephart sought damages for the consequences resulting from the $125,000 loss, including damages for past, present, and future mental, emotional, and psychological injury; destroyed and/or strained relationships with family members and friends; doctor, hospital, pharmaceutical, or other medical expenses; loss of quality of life and enjoyment of life; and other expenses not yet known to her. Kephart contended Caesars owed her a common law duty to protect her from its enticements to gamble because it knew she was a pathological gambler.
Caesars moved to dismiss the counterclaim under Trial Rule 12(B)(6). After a hearing, the trial court denied the motion but certified its ruling for interlocutory appeal. The Court of Appeals accepted jurisdiction and in a divided opinion reversed the trial court's judgment. Caesars Riverboat Casino, LLC v. Kephart, 903 N.E.2d 117 (Ind.Ct.App.2009). We granted transfer. See 919 N.E.2d 552 (Ind.2009) (Table).
Standard of Review
We review de novo the trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6). Babes Showclub v. Lair, 918 N.E.2d 308, 310 (Ind.2009). Such a motion tests the legal sufficiency of a claim, not the facts supporting it. Charter One Mortgage Corp. v. Condra, 865 N.E.2d 602, 604 (Ind.2007). Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. Id. at 604-05.
*1123 Discussion
I.
To prevail on a claim of negli-genee the plaintiff must show 1) duty owed to the plaintiff by defendant, 2) breach of duty by allowing conduct to fall below the applicable standard of care, and 3) com-pensable injury proximately caused by defendant's breach of duty. Kroger Co. v. Plonski, 930 N.E.2d 1, 6 (Ind.2010). Absent a duty there can be no negligence or liability based upon the breach. Id.
Where, as here, the existence of a duty has not been previously articulated, the three-part balancing test this court developed in Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind.1991) (relationship between the parties, foreseeability, and public policy) can be a useful tool in determining whether a duty exists. We say "can be" because in this case the tool has not proven to be of much assistance. Both the Court of Appeals majority as well as the dissent applied the Webb factors. And despite well-reasoned and thoughtful analysis on both sides, each reached an opposite result. Speaking for the majority, Judge Mathias concluded "[t}here is no common law duty obligating a casino operator to refrain from attempting to entice or contact gamblers that it knows or should know are compulsive gamblers." Kephart, 903 N.E.2d at 128. In dissent Judge Crone concluded, "all three [Webb ] factors militate in favor of imposing a duty on Caesars to refrain from enticing to its casino known pathological gamblers who have not requested that they be removed from the casino's direct marketing list or exeluded from the casino." Id. at 134 (Crone, J., dissenting).
We think it unnecessary to resolve this dispute today. Assuming without deciding that casino operators in this State might otherwise have a common law duty to refrain from attempting to entice or contact gamblers that it knows or should know are compulsive gamblers, we are of the view that the Legislature has abrogated the common law.
There is a presumption that the legislature does not intend to make any change in the common law beyond those declared in either express terms or by unmistakable implication. South Bend Cmty. Schs. Corp. v. Widawski, 622 N.E.2d 160, 162 (Ind.1993). "An abrogation of the common law will be implied (1) where a statute is enacted which undertakes to cover the entire subject treated and was clearly designed as a substitute for the common law; or, (2) where the two laws are so repugnant that both in reason may not stand." Irvine v. Rare Feline Breeding Ctr., Inc., 685 N.E.2d 120, 123 (Ind.Ct.App.1997), trans. denied.
When the General Assembly legalized riverboat gambling in 1998, it expressed its intent as follows:
This article is intended to benefit the people of Indiana by promoting tourism and assisting economic development. The public's confidence and trust will be maintained only through:
(1) comprehensive law enforcement supervision; and
(2) the strict regulation of facilities, persons, associations, and gambling operations under this article.
I.C. § 4-33-1-2. The Legislature established the Indiana Gaming Commission ("Commission") as the administrative ageney responsible for administration, regulation and enforcement of the riverboat gaming system. See generally I.C. § 4-33-4-1. Under this statute the Commission has jurisdiction and supervision over "[alll persons on riverboats where gambling operations are conducted" and enjoys "Talll powers necessary and proper to fully and effectively execute" the statute. I.C. *1124 § 4-33-4-1(3)(B), (2). Those powers include the right to "[tlake appropriate administrative enforcement or disciplinary action against a licensee or an operating agent." I.C. § 4-33-4-1(6). Moreover, the Commission has broad powers to "[tlake any reasonable or appropriate action to enforce [the statute]," including the power to "[rlevoke, suspend, or renew licenses issued under [the statute]." I.C. § 4-33-4-1(16), (14). The Commission's authority also includes investigating violations, conducting hearings, adopting rules, levying and collecting penalties for noncriminal violations, and adopting a voluntary exelusion program for gamblers. I.C. §§ 4-33-4-1, 4-38-4-3. Thus it seems apparent Indiana Code 4-88 covers the entire subject of riverboat gambling. Accord Atlantic City Showboat Inc. v. Dep't of Cmty. Affairs of State, 331 N.J.Super. 40, 751 A.2d 111, 118 (2000) (noting New Jersey's Casino Control Act is "extraordinarily pervasive and intensive" and recognizing the Act preempts well-settled areas of law (citing Hakimoglu v. Trump Taj Mahal Assocs., 70 F.3d 291, 293-94 (3rd Cir.1995) (holding common law dram shop liability does not apply to casinos))).
In this case, not only does the statutory scheme cover the entire subject of riverboat gambling, but the statutory scheme and Kephart's common law claim are so incompatible that they eannot both occupy the same space. As the sole regulator of riverboat gambling, the Commission has adopted detailed regulations at the legislature's direction. See 68 Ind. Admin. Code §§ 1-1-1 to 19-1-5. Indiana Code sections 4-33-4-3(a)(9) and (c) require the Commission to enact a voluntary exclusion program. See 68 I.A.C. §§ 6-1-1 to 6-3-5. Under this program any person may make a request to have his or her name placed on a voluntary exelusion list by following the required procedures. 68 I.A.C. § 6-3-2. To request exelusion, applicants must provide contact information, a physical description, and desired time frame of exclusion-one year, five years, or lifetime. Id. Casinos must have procedures by which excluded individuals are not allowed to gamble, do not receive direct marketing, and are not extended check cashing or credit privileges. 68 I.A.C. § 6-3-4. A casino's failure to comply with the regulations makes it subject to disciplinary action under 68 Indiana Administrative Code article 13.
Kephart's common law claim would hold Caesars to a similar standard regarding known pathological gamblers in absence of the voluntary exclusion program. The existence of the voluntary exclusion program suggests the legislature intended pathological gamblers to take personal responsibility to prevent and protect themselves against compulsive gambling. The legislature did not require casinos to identify and refuse service to pathological gamblers who did not self-identify. Kephart's claim directly conflicts with the legislature's choice. To allow Kephart's claim to go forward under the common law would shift primary responsibility from the gambler to casino. It is apparent that the legislature intended otherwise. Therefore allowing a common law negligence claim addressing behavior essentially the same as prohibited under the statutory scheme irreconcilably conflicts with the intent of the legislature.
In sum it appears to us that by unmistakable implication the Legislature has abrogated any common law claim that casino patrons might otherwise have against casinos for damages resulting from enticing patrons to gamble and lose money at casino establishments. The trial court thus erred in denying Caesars' motion to dismiss Kephart's counterclaim under Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted.
*1125 IL.
 In addition to her counter claim, Kephart also raised a number of affirmative defenses.[1] An affirmative defense is a defense "upon which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint but asserts additional matter barring relief." Rice v. Grant County Bd. of Comm'rs, 472 N.E.2d 213, 214 (Ind.Ct.App.1984) (emphasis omitted), trans. denied. Indiana Trial Rule 8(C) provides in relevant part, "A responsive pleading shall set forth affirmatively and carry the burden of proving: [list of defenses] and any other matter constituting an avoidance, matter of abatement, or affirmative defense." The list of affirmative defenses contained in the Rule is not exhaustive. Willis v. Westerfield, 839 N.E.2d 1179, 1185 (Ind.2006). Instead, whether a defense is affirmative, "depends upon whether it controverts an element of a plaintiff's prima facie case or raises matters outside the seope of the prima facie case." Id. (internal citations and quotation omitted).
Although Kephart does not have a common law cause of action against Caesars for damages stemming from the consequences of her gambling losses, nothing in this opinion precludes Kephart from controverting any element of Caesars' prima facie case or from raising matters outside the scope of Caesars' prima facie case.
Conclusion
We reverse the judgment of the trial court.
SHEPARD, C.J., and SULLIVAN, J., concur.
BOEHM, J., concurs in result with separate opinion.
DICKSON, J., dissents with separate opinion.

. Specifically Kephart alleges, "1. There was a lack of consideration for the checks or money claimed by Plaintiff for goods, wares, and/or services. 2. The Defendant, Mrs. Kep-hart, was incompetent at the time of the execution of the written instruments which are alleged in Plaintiff's complaint. 3. Any alleged contract with the Casino should be rescinded upon the following grounds: a. Breach of its implied covenant of good faith and fair dealing; b. Mrs. Kephart's capacity to contract was impaired by intoxication; c. Any checks or markers signed by Mrs. Kep-hart were void because they were signed under duress; d. The enforcement of any such alleged contract would be unconscionable{.] 4. By giving excessive amounts of alcohol to Mrs. Kephart, and then claiming it was injured by her actions or inactions, Caesars has waived any claim it might have for damages, pursuant to Ind.Code § 7.1-5-10-15.5(b) (1996). 5. Caesars failed to comply with Ind.Code § 34-16-1-1 (1998), which provides that any security made in consideration of money won as the result of a wager is void. 6. Caesars failed to comply with Ind.Code § 34-16-1-2 (1998), which requires that any civil action to recover any money by betting on a game be filed within one hundred eighty (180) days. 7. The prosecution of this lawsuit contravenes the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e. 8. The Complaint fails to state a claim upon which relief can be granted." Appellant's App. at 68-69.