

**FILED**

Feb 21 2019, 9:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

James D. Johnson
Blair M. Gardner
Jackson Kelly PLLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Commissioner of the Indiana Department of Environmental Management, <br><br> *Appellant-Petitioner,* <br><br> v. <br><br> Eagle Enclave Development, LLC, <br><br> *Appellee-Respondent.* | February 21, 2019 <br><br> Court of Appeals Case No. 18A-MI-1379 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Leslie C. Shively, Judge <br><br> Trial Court Cause No. 82D01-1707-MI-3721 |

**Najam, Judge.**

## Statement of the Case

[1]     The Commissioner of the Indiana Department of Environmental Management ("IDEM") appeals the trial's court denial of its Indiana Trial Rule 12(B)(6)

motion to dismiss counterclaims filed by Eagle Enclave Development ("Eagle"). IDEM presents a single issue for our review, namely, whether the trial court erred when it denied IDEM's motion to dismiss.

We reverse and remand with instructions.

## Facts and Procedural History

Eagle owns and operates a development in Evansville. Eagle obtained a permit in order to remove vegetation and soil and to discharge storm water associated with the construction of its development. Between September 30, 2013, and June 17, 2014, IDEM conducted four inspections of Eagle's development site. During those inspections, IDEM observed that Eagle had violated Indiana law when it failed to minimize sedimentation to off-site areas. Specifically, IDEM observed thick sediment deposits in an off-site pond owned by an individual named Barbara Bolin. As a result of the violations, IDEM issued a Notice of Violation to Eagle on July 30, 2014.

In order to resolve the violations, Eagle and IDEM entered into an Agreed Order on January 23, 2015. Pursuant to the terms of the Agreed Order, Eagle agreed to "submit a plan including the specific actions [Eagle] will take to remove any sediment attributable to the activities at the Site from the off-site pond owned by Barbara Bolin." Appellant's App. Vol. II at 28. Eagle also agreed to include in the plan a schedule for implementation and completion of all required actions. The Agreed Order further provided:

In the event IDEM determines that any plan submitted by [Eagle] is deficient or otherwise unacceptable, [Eagle] shall revise and resubmit the plan to IDEM in accordance with IDEM's notice. After three (3) submissions of any plan by [Eagle], IDEM may modify and approve any plan and [Eagle] must implement the plan, as modified by IDEM.

*Id*. at 29. And, "[i]n recognition of the settlement reached," Eagle agreed to "waive[] any right to administrative or judicial review of this Agreed Order." *Id*. at 27.

Eagle then had two studies conducted in order to determine the amount of sediment in the Bolin pond that was attributable to Eagle's actions. Based on those studies, Eagle concluded that only an "inconsequential" amount of sediment in the Bolin pond had come from Eagle's development. *Id*. at 36. Accordingly, on June 1, 2016, Eagle wrote a letter to IDEM in which Eagle asked IDEM to modify the Agreed Order. Specifically, Eagle requested that IDEM remove the requirement for Eagle to dredge the pond. In exchange, Eagle offered to donate property to IDEM in order to act as a buffer to control runoff from Eagle's development. IDEM responded that Indiana law does not establish a threshold amount of sediment runoff that constitutes a violation but, rather, the mere fact that sediment was discharged from the site was sufficient to be a violation. Because sediment had left Eagle's property and entered the Bolin pond, and because "[t]he requirement to remove the sediment from the off-site pond is necessary to remediate . . . the violations," IDEM denied Eagle's request to modify the Agreed Order. *Id*. at 39.

[6]     Thereafter, Eagle filed a petition for review with the Office of Environmental Adjudication ("OEA") in which Eagle requested the OEA to declare the waiver provision of the Agreed Order void for lack of notice and to find that IDEM's denial of Eagle's modification request was an abuse of agency discretion. Eagle then filed a motion for partial summary judgment. In response, IDEM filed a motion to dismiss Eagle's petition or, in the alternative, enter summary judgment for IDEM. The OEA granted IDEM's motion to dismiss and cross-motion for summary judgment. As to Eagle's first claim, the OEA concluded that Eagle's appeal of the wavier provision of the Agreed Order was not timely. As to Eagle's second claim, the OEA concluded that IDEM's letter denying Eagle's request to modify the Agreed Order was not a reviewable order under the Indiana Administrative Order and Procedures Act ("AOPA"). And the OEA determined that Eagle's June 1, 2016, request to modify the Agreed Order "should be considered [Eagle's] first proposal" required by the Agreed Order. *Id*. at 47.

[7]     In light of the OEA's findings and conclusions, IDEM considered Eagle's request for modification as its first proposed plan. IDEM then informed Eagle that its plan was deficient because the proposal did not describe the actions Eagle would take to remove sediment from the Bolin pond. In response, Eagle proposed a second plan to IDEM. In the second plan, Eagle again stated that any sediment discharge from its development site to the Bolin pond was "insignificant" and requested that IDEM remove the requirement that Eagle

dredge the pond. *Id.* at 53. Eagle again proposed donating a portion of its property to serve as a buffer to control runoff.

[8] IDEM then filed a petition for civil enforcement of the Agreed Order.[1] In that petition, IDEM asserted that Eagle had failed to comply with all of the terms and conditions of the Agreed Order. Specifically, IDEM asserted that Eagle had "failed to comply with paragraph 6 of the Order Section of the Agreed Order by submitting a plan that includes actions to be taken to remove any sediment attributable to the activities at the Site from the off-site pond owned by Barbara Bolin." *Id.* at 19. IDEM asked the court to order Eagle to comply with the Agreed Order.

[9] Eagle filed its response and affirmative defenses. In addition, Eagle asserted three counterclaims against IDEM. First, Eagle claimed that IDEM had failed to provide adequate notice to Eagle that it had agreed to waive its right to seek judicial or administrative review of the Agreed Order, which notice was required by AOPA. Eagle asserted that IDEM's failure to provide adequate notice of the waiver provision rendered that provision void. Second, Eagle claimed that IDEM's denial of Eagle's June 1, 2016, request to modify the Agreed Order was an appealable order under AOPA and that it was an abuse of agency discretion for IDEM to deny Eagle's request. And, third, Eagle

---

[1] Indiana Code Section 4-21.5-6-1 provides that, in addition to any other remedy provided by law, the attorney general in the name of the state at the request of a state agency "may apply for a court order in a circuit or superior court to enforce an order issued under this article by a verified petition for civil enforcement."

contended that IDEM does not have jurisdiction over the pond because it is privately owned.

[10] IDEM filed a motion to dismiss Eagle's counterclaims under Indiana Trial Rule 12(B)(6). In its motion to dismiss, IDEM contended that the trial court should dismiss Eagle's first counterclaim because Eagle had waived its right to seek administrative and judicial review of the Agreed Order and that Eagle's first counterclaim was simply an attempt to renegotiate the terms of the Agreed Order. IDEM contended that Eagle's second counterclaim must fail because IDEM's letter rejecting Eagle's proposed modification was not an appealable order as it did not alter the effectiveness of the Agreed Order or otherwise "determine a legal right, duty, privilege, immunity, or other legal interest." *Id*. at 80. Rather, IDEM asserted that all of Eagle's duties were established in the Agreed Order and that the letter was "merely a statement or clarification by IDEM regarding what was already determined and agreed to in the Agreed Order[.]" *Id*. Finally, IDEM asserted that the trial court must dismiss Eagle's third counterclaim because Eagle had waived any right to administrative or judicial review of the Agreed Order, because Eagle is "far past" the thirty-day deadline to seek judicial review of the order, and because Eagle had waived the question of IDEM's jurisdiction by failing to raise it before the OEA. *Id*. at 82. Following a telephonic hearing, the trial court denied IDEM's motion to dismiss. The trial court certified its order for interlocutory appeal, which we accepted.

# Discussion and Decision

[11] IDEM contends that the trial court erred when it denied IDEM's Indiana Trial Rule 12(B)(6) motion to dismiss Eagle's counterclaims.[2] As the Indiana Supreme Court has stated:

> We review *de novo* the trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6). *Babes Showclub v. Lair*, 918 N.E.2d 308, 310 (Ind. 2009). Such a motion tests the legal sufficiency of a claim, not the facts supporting it. *Charter One Mortgage Corp. v. Condra*, 865 N.E.2d 604, 604 (Ind. 2007). Viewing the complaint in the light most favorable to the non-moving party, we must determine whether the complaint states any facts on which the trial court could have granted relief. *Id.* at 604-05.

*Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1122 (Ind. 2010).

### *Counterclaim One*

[12] IDEM first contends that the trial court erred when it denied IDEM's motion to dismiss Eagle's first counterclaim, which claimed that the waiver provision of the Agreed Order was void for lack of notice. Specifically, IDEM asserts that the trial court should have dismissed Eagle's first counterclaim because Eagle had raised the same issue before the OEA and received an adverse judgment but did not seek judicial review of that judgment. Eagle agrees and

---

[2] IDEM also filed a motion to stay discovery pending the outcome of its motion to dismiss, which motion the trial court denied at the same time it denied IDEM's motion to dismiss. However, IDEM makes no argument on appeal that the trial court erred when it denied IDEM's motion to stay discovery.

acknowledges that its first counterclaim is improper because the OEA's judgment "became final" when Eagle did not seek review of that judgment. Appellee's Br. at 12. Accordingly, Eagle "now abandons this claim" and agrees that it should be dismissed. *Id.* We therefore need not address IDEM's contention that the trial court erred when it denied IDEM's motion to dismiss Eagle' first counterclaim for lack of notice.

### *Counterclaim Two*

[13] IDEM next contends that the trial court erred when it did not dismiss Eagle's second counterclaim, which asserted that IDEM's August 12, 2016, letter denying Eagle's request to modify the Agreed Order was a final order under AOPA and that it was an abuse of agency discretion for IDEM to deny Eagle's request. IDEM specifically asserts that Eagle is precluded from asserting that counterclaim because Eagle had raised the same issue before the OEA and had received an adverse judgment but did not timely seek judicial review of that judgment. In essence, IDEM contends that Eagle is using the second counterclaim as an indirect and improper means to belatedly seek judicial review of an issue that had already been adjudicated by the OEA. We must agree.

[14] Here, Eagle voluntarily entered into the Agreed Order in which it agreed to submit a plan that included the specific actions Eagle would take to remove the sediment attributable to its actions from the pond. After Eagle had conducted tests and determined that only an "inconsequential" amount of sediment was attributable to its actions, Eagle requested that IDEM modify the Agreed Order.

Appellant's App. Vol. II at 36.  When IDEM declined to modify the Agreed Order, Eagle filed a complaint with the OEA in which it alleged that IDEM's denial of the modification request was an abuse of agency discretion.  But the OEA concluded that IDEM's letter denying Eagle's request was not a reviewable order under AOPA as the letter did not order Eagle to take any action.

[15]  On April 27, 2017, the OEA issued its order in which it concluded that IDEM's letter was not a reviewable order under AOPA.  A final order of the OEA's environmental law judge "is subject to judicial review under IC 4-21.5-5."  Ind. Code § 13-30-3-7 (2018).  And Indiana Code Section 4-21.5-5-4(b)(1) provides that a person who "fails to . . . timely petition for review of an order . . . has waived the person's right to judicial review[.]"  Indeed, the OEA's order indicated that it "is a Final Order subject to Judicial Review consistent with the applicable provisions of I.C. § 4-21.5.  Pursuant to I.C. § 4-21.5-5-5, a Petition for Judicial Review of this Final Order is timely only if it is filed . . . within thirty (30) days . . . ."  Appellant's App. Vol. II at 47.   There is no dispute that Eagle did not timely file a petition for judicial review of that order.  Accordingly, Eagle waived its right to seek judicial review of the OEA's order.

[16]  Still, Eagle asserts that it is not precluded from raising its second counterclaim because the OEA's decision "was not final as to the ultimate question—whether IDEM arbitrarily denied its requested modification—that Eagle . . . prematurely sought to answer."  Appellee's Br. at 14.  Eagle is correct that the OEA did not reach the merits of its claim.  But the OEA concluded that it was not able to

reach the merits of Eagle's claim because IDEM's letter was not a reviewable order under AOPA. As discussed above, the OEA's decision was a final order subject to judicial review. If Eagle believed that the OEA was incorrect and that IDEM's letter was a reviewable order, Eagle should have challenged the OEA's order by seeking judicial review. But Eagle did not, which rendered the OEA's conclusion that IDEM's letter was not a reviewable order under AOPA final. Because Eagle waived its right to seek judicial review of the OEA's order, Eagle cannot now raise that same issue in a counterclaim before the trial court. The trial court therefore erred when it denied IDEM's motion to dismiss Eagle's second counterclaim.[3]

### Counterclaim Three

[17]     Finally, IDEM contends that the trial court erred when it did not dismiss Eagle's third counterclaim, which asserted that IDEM does not have jurisdiction over the pond. Specifically, IDEM contends that the trial court erred when it denied IDEM's motion to dismiss that counterclaim because Eagle had waived the issue of IDEM's jurisdiction when Eagle had failed to raise that issue before the OEA. In essence, IDEM asserts that the trial court

---

[3] To the extent that Eagle asserts that IDEM "opened the door" to Eagle's second counterclaim when IDEM filed the petition for civil enforcement after Eagle had only submitted two proposed plans, Eagle has not cited any authority to support its position that that counterclaim is properly before the trial court despite the fact that Eagle did not timely seek judicial review of the OEA's order. Appellant's Br. at 17.

should have dismissed Eagle's third counterclaim because Eagle had failed to exhaust its administrative remedies.[4]

[18]     Our Supreme Court has addressed whether the issue of jurisdiction can be raised without having completed the administrative process. In *Indiana Department of Environmental Management v. Twin Eagle LLC*, a developer filed a declaratory judgment action in which it sought to prevent IDEM from enforcing state laws against its project. 798 N.E.2d 839, 842 (Ind. 2003). IDEM responded and filed a motion to dismiss the developer's action due to the developer's failure to exhaust its administrative remedies, and both parties filed motions for summary judgment. *Id*. The trial court concluded that Indiana's environmental laws did not give IDEM regulatory authority over private ponds or isolated wetlands and granted the developer's motion for summary judgment. *Id*. at 843.

[19]     IDEM appealed to the Indiana Supreme Court and asserted that the trial court lacked subject matter jurisdiction over the developer's claim because the developer had failed to exhaust its administrative remedies. *Id*. The Indiana Supreme Court reiterated the "value of completing administrative proceedings before resorting to judicial review." *Id*. at 844. But the Court went on to state that, "generally, if an action is brought upon the theory that the agency lacks

---

[4] IDEM makes no argument in its brief on appeal that the waiver provision of the Agreed Order precludes Eagle from asserting its third counterclaim. Indeed, IDEM acknowledges that Eagle could have "raised this issue in its OEA appeal." Appellant's Br. at 16.

the jurisdiction to act in a particular area, exhaustion of remedies is not required." *Id.*

[20] Nonetheless, the Court also stated that, in order for IDEM to have the authority to regulate specific waters, the body of water at issue must fall under the statutory definition of "waters." *Id.* at 846. The Court further noted that the statutory term "waters" does not include a private pond, which is "a body of water wholly upon the land of a single owner or group of owners and not connected with any public waters of the state." *Id.* (citing *Trowbridge v. Torabi*, 693 N.E.2d 622, 627 (Ind. Ct. App. 1998)). And the Court held that whether the developer's project "involves ponds within this definition" was a fact issue "for administrative determination in the first instance." *Id.* at 846-47. The Court further stated that, even if the developer were correct and the particular waters at issue were not subject to regulation, "the proper forum to address this fact sensitive issue is through the administrative process." *Id.* at 845.

[21] Accordingly, while the *Twin Eagle* Court stated that the exhaustion of administrative remedies is generally not required if the action is brought under the theory that an agency lacks jurisdiction, it is clear that that exception only applies where the question of the agency's jurisdiction presents a pure question of law. Thus, where the question of an agency's jurisdiction turns on a question of fact, resort to the administrative process is still a condition precedent to judicial review.

[22] Our Court addressed a similar issue in *Outboard Boating Club of Evansville, Inc., v. Indiana State Department of Health*, 952 N.E.2d 340 (Ind. Ct. App. 2011). In *Outboard Boating Club*, the owners of two private boat club facilities received notices from the Indiana State Department of Health ("ISDH") that the clubs were in violation of a provision of Indiana law applicable to campgrounds. *Id.* at 342. The clubs filed a declaratory judgment action asserting that ISDH lacked jurisdiction to regulate their facilities because the facilities were not "campgrounds" within the statutory definition. *Id.* ISDH filed a motion to dismiss in which it alleged that the trial court lacked subject matter jurisdiction to hear the case because the clubs had failed to exhaust their administrative remedies. *Id.* The trial court granted ISDH's motion to dismiss. *Id.*

[23] On appeal, the clubs asserted that the trial court erred when it concluded that it lacked subject matter jurisdiction because the clubs were not required to exhaust their administrative remedies since their action challenged ISDH's jurisdiction to regulate their facilities. *Id.* at 344. This Court stated that "the clubs d[id] not argue that the ISDH lack[ed] general authority to regulate campgrounds. Rather, they argue[d] that their facilities [were] outside the ISDH's regulatory jurisdiction because they d[id] not fall within the regulatory definition of campgrounds." *Id.* at 346. Because the clubs did not question ISDH's general authority over campgrounds but, instead, challenged ISDH's authority over a particular campground, this Court held that the club's question of ISDH's jurisdiction "over a particular site is precisely the type of fact sensitive issue the *Twin Eagle* court concluded should be resolved in the first

instance by the administrative agency." *Id*. at 345. Accordingly, this Court concluded that the clubs were required to exhaust their administrative remedies before the trial court could hear the action. *Id*. at 347.

[24] Here, Eagle asserts that it did not need to exhaust its administrative remedies before raising counterclaim three to the trial court because that counterclaim raised the question of IDEM's jurisdiction. But Eagle does not challenge IDEM's general authority to regulate waters. Rather, Eagle contends that the particular water at issue is not subject to IDEM's jurisdiction. To support its assertion that IDEM does not have jurisdiction over the pond, Eagle cites Indiana Code Section 13-11-2-265(a), which defines "waters" as "(1) the accumulation of water, surface or underground, natural and artificial, public and private; or (2) a part of the accumulations of water." Eagle also cites to Indiana Code Section 13-11-2-265(b)(2), which specifically excludes "a private pond" from the definition of "waters." Eagle then contends that, because the Bolin pond is privately owned, it is not a "water" subject IDEM's jurisdiction. IDEM responds that the "Bolin pond is not a private pond because it is connected with public waters of the state." Reply Br. at 9.

[25] The parties' arguments demonstrate that, as in *Outboard Boating Club*, here the question is not whether IDEM has the general authority to regulate waters but whether the Bolin pond is a private pond or whether the pond is connected to public waters of the State. Eagle's question of IDEM's jurisdiction "over a particular site is precisely the type of fact-sensitive issue the *Twin Eagle* court concluded should be resolved in the first instance by the administrative

agency." *Outboard Boating Club of Evansville, Inc.*, 952 N.E.2d at 345. Because the question of whether the Bolin pond is subject to IDEM's jurisdiction is one of fact and not one of law, "the proper forum to address this fact sensitive issue is through the administrative process." *Twin Eagle*, 798 N.E.2d at 845. Accordingly, Eagle was required to raise the question of IDEM's jurisdiction to the administrative agency before it could raise it to the trial court. *See Outboard Boating Club of Evansville, Inc.*, 952 N.E.2d at 347. Because Eagle did not raise the factual issue of IDEM's jurisdiction to the administrative agency first, Eagle has not preserved for the trial court's review Eagle's claim that IDEM lacks jurisdiction over the Bolin pond. The trial court therefore erred when it denied IDEM's motion to dismiss Eagle's third counterclaim.

## *Conclusion*

[26]     In sum, we need not address IDEM's contention that the trial court erred when it did not dismiss Eagle's first counterclaim as Eagle has abandoned that counterclaim. We hold that the trial court erred when it denied IDEM's motion to dismiss Eagle's second counterclaim because the OEA had already adjudicated that issue and because Eagle failed to timely seek judicial review of the OEA's order. We also hold that the trial court erred when it denied IDEM's motion to dismiss Eagle's third counterclaim because Eagle has not preserved the question of IDEM's jurisdiction for the trial court's review as it is a fact-sensitive question that must be raised for the first time before the administrative agency. Accordingly, we reverse the trial court's order denying

IDEM's motion to dismiss, and we remand with instructions for the trial court to dismiss Eagle's three counterclaims.[5]

Reversed and remanded with instructions.

Pyle, J., and Altice, J., concur.

---

[5] Throughout its brief, Eagle asserts that IDEM wrongly filed its petition for civil enforcement. Specifically, Eagle contends that IDEM was bound by the Agreed Order and the OEA's decision, which both precluded IDEM from filing its petition before Eagle submitted its third plan. Eagle also asserts that IDEM should have filed a declaratory judgment action instead of the petition for civil enforcement. However, Eagle did not raise either of those issues in the trial court. "It is well settled that we generally will not address an argument that was not raised in the trial court and is raised for the first time on appeal." *Leatherman v. State*, 101 N.E.3d 879, 885 (Ind. Ct. App. 2018). Accordingly, we will not consider Eagle's arguments that IDEM improperly filed its petition or that IDEM should have instead filed a declaratory judgment action.