

I N  T H E

# Indiana Supreme Court



FILED

Apr 02 2024, 11:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Supreme Court Case No. 23S-CT-272

Safeco Insurance Company of Indiana as Subrogee of Ramona Smith,

*Appellant (Plaintiff below),*

–v–

Blue Sky Innovation Group, Inc.; Cabela's Wholesale, L.L.C.; TMBC, L.L.C. of Missouri; Bass Pro Outdoor World, L.L.C.; Cabela's Retail MO, L.L.C.; Bass Pro, L.L.C.; Bass Pro Group, LLC; and Michaelis Corporation,

*Appellees (Defendants below).*

---

Argued: November 13, 2023 | Decided: April 2, 2024

Appeal from the Marion Superior Court
No. 49D12-2110-CT-35831
The Honorable Patrick J. Dietrick, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CT-1924

---

**Opinion by Justice Massa**

Chief Justice Rush and Justices Slaughter and Molter concur.
Justice Goff concurs in part and dissents in part with separate opinion.

**Massa, Justice.**

Safeco Insurance appeals the trial court's dismissal of its third-party spoliation and negligence claims against the Michaelis Corporation, arguing Indiana common law recognizes the tort. We hold that it does not under these facts and affirm the trial court.

# Facts and Procedural History

Ramona Smith owned a home insured by Safeco. In 2019, a fire caused more than $500,000 worth of damage, and Safeco covered the loss.

Safeco hired Michaelis to restore the Property and conducted a scene examination determining the fire originated from a kitchen counter dehydrator. A Michaelis representative was present for the examination, and "the need to preserve the kitchen was verbally communicated[.]" Appellant's App. Vol. II, p. 32. With the kitchen sealed off, Michaelis constructed a temporary structure to protect the fire origin area from the elements. Michaelis eventually demolished the kitchen and discarded the dehydrator.

With an eye toward bringing an action for the defective dehydrator causing the fire for which it had to make Smith whole, Safeco sued Michaelis for negligence and spoliation of evidence impeding its ability to bring a successful claim. Michaelis moved to dismiss under Indiana Trial Rule 12(B)(6), arguing Safeco failed to state a claim upon which relief may be granted because Indiana only recognizes third-party spoliation claims under narrow circumstances, none of which exist here. Michaelis also argued the economic loss doctrine bars Safeco's negligence claim.

The trial court construed both claims against Michaelis as third-party spoliation claims, which "under prevailing Indiana case law . . . have only be[en] recognized in limited circumstances. No such circumstances have been pled by Safeco" and granted Michaelis' motions. *Id.* at 16–17. Safeco appealed and the Court of Appeals reversed, finding Safeco sufficiently

pled third-party spoliation and negligence claims. *Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp. Inc.*, 211 N.E.3d 564, 574 (Ind. Ct. App. 2023).

Michaelis petitioned for transfer, which we granted, thus vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Appellate review of a ruling on a Trial Rule 12(B)(6) motion is de novo. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1122 (Ind. 2010). "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Club of Nw. Ind.*, 845 N.E.2d 130, 134 (Ind. 2006) (citation omitted). Appellate courts do not test the sufficiency of the facts alleged regarding their adequacy to provide recovery but test the sufficiency of whether a legally actionable injury has occurred in a plaintiff's stated factual scenario. *Id.* The appellate court accepts the alleged facts as true, drawing every reasonable inference in favor of the non-moving party. *Id.* An order to dismiss is affirmed when it is "apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." *McQueen v. Fayette Cnty. Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied*.

## Discussion and Decision

Our Court of Appeals first recognized a cause of action for third-party spoliation in *Thompson ex rel. Thompson v. Owensby*, 704 N.E.2d 134 (Ind. Ct. App. 1998), *trans. denied*, and later emphasized it is recognized "only in **narrow circumstances** where a relationship exists between the claimant and the third party sought to be held responsible for a failure to preserve evidence[,]" *Kelly v. Patel*, 953 N.E.2d 505, 510–11 (Ind. Ct. App. 2011) (emphasis added). In between these two decisions by appellate panels, our Court declined to recognize a third-party spoliation tort claim "under the circumstances" of the case in *Glotzbach v. Froman*, 854 N.E.2d 337, 339 (Ind.

2006). We continue to hold that view and land in the same place today under these similar circumstances. We affirm the trial court's dismissal of Counts III and IV of the amended complaint and apply our precedent in *Webb v. Jarvis* to explain why we go no further.

## I.  The trial court properly dismissed Safeco's third-party spoliation claim in Count III of the amended complaint.

Spoliation is "'[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible.'" *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (quoting *Spoliation*, Black's Law Dictionary (7th ed. 1999)). There are two types of spoliation claims: first-party spoliation and third-party spoliation. First-party spoliation "refers to spoliation of evidence by a party to the principal litigation," and third-party spoliation refers to the spoliation of evidence "by a non-party." *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 350 (Ind. 2005).

### A. Overview of Indiana third-party spoliation law

In 1991, our Court considered third-party actions more broadly in *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), weighing the duty a physician owes to an injured third-party. In *Webb*, a physician prescribed a patient anabolic-steroids. *Id.* at 994. The patient later battered and threatened his wife who left the family home, fearing for her safety. *Id.* The wife and an officer later returned to the family home, where the patient shot the officer. *Id.* The officer sought recovery from the physician, arguing the physician had a duty to account for possible harm to third parties when he administered medical treatment. *Id.* at 994. Our Court concluded that the officer's claim was rooted in negligence and established three factors to balance: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.* at 995.

That same year, the Court of Appeals rejected an invitation to recognize a third-party spoliation claim. *See Murphy v. Target Prods.*, 580 N.E.2d 687, 690 (Ind. Ct. App. 1991), *trans. denied*. In *Murphy*, the plaintiff was injured in a workplace accident, and the court considered whether an employee has an action against his employer "asserting tortious interference with that employee's prospective products liability claim against a third party due to the intentional or negligent spoliation of potential evidence." *Id.* at 688. The court concluded that "in the absence of an independent tort, contract, agreement, or special relationship imposing a duty to the particular claimant, the claim of negligent or intentional interference with a person's prospective or actual civil litigation by the spoliation of evidence is not and ought not be recognized in Indiana." *Id.* at 690.

By contrast, third-party spoliation **was** later recognized in *Thompson ex rel. Thompson v. Owensby*, 704 N.E.2d 134 (Ind. Ct. App. 1998), *trans. denied*. In *Thompson*, a cable restrained a dog that broke free and mauled the plaintiff. *Id.* at 135. The plaintiff sued the dog's owner and the manufacturer of the cable. *Id.* The dog owner's insurance carrier took possession and later lost the cable. *Id.* The plaintiff then filed a spoliation claim against the defendant's insurance company for failing to preserve the evidence. *Id.* at 136. The plaintiff argued the insurance company "assumed a duty to safeguard the cable" and breached that duty when it lost the cable. *Id.* The court considered whether the insurance company had a duty to preserve the cable, and applied the *Webb* factors permitting the claim to proceed because "[l]iability insurance carriers are no strangers to litigation, and it strains credulity to posit in a motion to dismiss that a liability carrier could be unaware of the potential importance of physical evidence." *Id.* at 137–40.

In 2005, this Court addressed two certified questions from the United States District Court, asking us to recognize an independent claim for intentional first-party spoliation of evidence. *Gribben v. Wal-Mart Stores*, 824 N.E.2d 349, 350 (Ind. 2005). In *Gribben*, an employee-plaintiff sustained a fall at Wal-Mart and moved to amend her complaint to add a claim for spoliation of evidence against employer-defendant for failing to preserve the surveillance video. *Id.* We concluded that available remedies

outweighed considerations for recognizing an independent tort of first-party spoliation and expressly left open whether Indiana law recognized a tort of spoliation by third parties. *Id.* at 355–56.

A year later, this Court took up a third-party spoliation claim in *Glotzbach v. Froman*, 854 N.E.2d 337 (Ind. 2006). In *Glotzbach*, an employee was killed in an explosion. *Id.* at 338. Three days later, government investigators told employer not to dispose of the debris, but days later, employer reported it was thrown away. *Id.* The trial court denied defendant's motion to dismiss a third-party spoliation claim, and the Court of Appeals affirmed. *Id.* Our Court granted transfer and, like today, reviewed Court of Appeals precedent that recognized third-party spoliation in very limited circumstances but found those special circumstances lacking. *Id.* at 338–42. In not recognizing the tort under the circumstances of that case, we did not explicitly reject it as a matter of law in all cases. *Id.* We acknowledged without disapproving the Court of Appeals' approach and went no further in applying it, noting in the opening paragraph that "[t]he legislature is, of course, free to provide a different rule if it concludes otherwise." *Id*. at 337.

Subsequent to our decision in *Glotzbach*, the Court of Appeals limited its third-party spoliation law in *American National Property and Casualty Company v. Wilmoth*, 893 N.E.2d 1068 (Ind. Ct. App. 2008), *trans. denied*. In *Wilmoth*, a rental home fire resulted in several deaths. *Id.* at 1069. Firefighters discarded items onto the front yard; weeks later, the items were discarded by the homeowners. *Id.* at 1070. The survivor filed a complaint against the homeowners' insurance company alleging the company "permitted [the] spoliation of evidence" that they might need in an action against the homeowners. *Id.* at 1069. Applying the three factors authorized under precedent, the court examined the relationship between the parties, the foreseeability of the type of harm to the plaintiff, and the public policy behind recognizing a duty. *Id.* at 1070–71. The court recognized a relationship between the insurance carrier and third-party claimant but concluded that "[t]he duty to preserve evidence" is limited because the insurance company never possessed the evidence. *Id.* at 1071. The court also determined that it was unforeseeable that the loss of

evidence would be needed for a future claim, *id.* at 1072, and declined to find a duty requiring insurers to preserve all "potentially relevant evidence available" because "[r]etention and safekeeping" of the "evidence would be a practical impossibility[,]" *id.* at 1073.

More recently, in *Shirey v. Flenar*, the Court of Appeals considered whether a patient had a spoliation of evidence claim against a doctor who lost or destroyed her medical records "that he knew or should have known [were] relevant to [her] personal-injury claim[.]" 89 N.E.3d 1102, 1107 (Ind. Ct. App. 2017). The court again examined the parties' relationship, the foreseeability of harm, and public policy concerns, *id.* at 1108–11, and concluded the doctor "had an enforceable duty to preserve [the plaintiff's] medical records once she requested them from him[,]" *id.* at 1111.

Having established the historical ground rules, we must now balance our *Webb* factors to analyze whether Michaelis had a duty to preserve the evidence. *See Thompson*, 704 N.E.2d at 137–40; *Wilmoth*, 893 N.E.2d at 1070–73; *Shirey*, 89 N.E.3d at 1107–11.

## B. Relationship between the parties

A "duty to preserve evidence may be assumed voluntarily or imposed by statute, regulation, contract, or certain other circumstances." *N. Ind. Pub. Serv. Co. v. Aqua Env't Container Corp.*, 102 N.E.3d 290, 301 (Ind. Ct. App. 2018). But that duty is determined by whether a special relationship exists between the parties. *See Webb*, 575 N.E.2d at 995 (stating a duty "flows from that special consensual relationship"). These special relationships are "premised on privity." *Id.* "[A]n alleged tortfeasor's knowledge of the plaintiff's situation or circumstances may support recognition of a duty." *Thompson*, 704 N.E.2d at 137 (citation omitted).

The determination of a special relationship turns on the facts. For example, a special relationship could exist between a doctor and her patient because the doctor has a duty to possess "the ordinary knowledge and skill[s]" of the profession and must use those skills "in a reasonable, diligent, and careful manner in undertaking the care and treatment of [the] patient." *Webb*, 575 N.E.2d at 995. A special relationship could also

exist between an insurance carrier and a third-party claimant. *Thompson*, 704 N.E.2d at 137. This special relationship could require a duty to the third-party claimant "if the [insurance] carrier knew or should have known of the likelihood of litigation and of the claimant's need for the evidence in the litigation." *Id.* An insurance carrier "has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds[.]" *Burr v. United Farm Bureau Mut. Ins. Co.*, 560 N.E.2d 1250, 1255 (Ind. Ct. App. 1990), *trans. denied*. It is the insurance carrier's knowledge of litigation, investigation of the claim, and possession of evidence that could create a special relationship with a third-party and a duty to maintain evidence. *Thompson*, 704 N.E.2d at 137.

Safeco argues a special relationship exists because Michaelis knew there was a need to preserve the dehydrator. Safeco argues the special relationship formed when it "verbally communicated 'the need to preserve the kitchen' to Michaelis" and when Michaelis voluntarily constructed a temporary structure to protect evidence against the elements. Appellant's Br. at 23. But a special relationship does **not** exist between the parties. Safeco conceded that there is no written or oral contract that would create a special relationship between Michaelis and Safeco. Oral Argument at 7:50–8:20. While Safeco orally communicated the need to preserve the kitchen to Michaelis, Safeco did not communicate the need to preserve the dehydrator was for possible litigation. Moreover, Michaelis is not like an insurance company that regularly participates in litigation, *Thompson*, 704 N.E.2d at 137, and does not ordinarily "investigate and evaluate claims made by its insureds," *Burr*, 560 N.E.2d at 1255. Safeco is the party that is ordinarily involved in litigation, regularly investigates its insured's claims, and knows the possibility of litigation. *Thompson*, 704 N.E.2d at 137.

## C. Foreseeability of the harm

"[T]he foreseeability component of the duty inquiry requires a 'general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.'" *Shirey*, 89 N.E.3d at 1108 (quoting *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 390 (Ind. 2016)).

But "a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm." *Webb*, 575 N.E.2d at 997.

Safeco alleges it was reasonably foreseeable that Safeco would be harmed by the loss of the dehydrator because it orally communicated to Michaelis the need to preserve the dehydrator. In *Glotzbach*, we observed that an "explicit written request from the employee's attorney to preserve the evidence" could support recognizing a spoliation claim. 854 N.E.2d at 340. By contrast, Safeco **orally** communicated the general need to preserve the dehydrator to Michaelis and a written request to preserve the evidence to Michaelis was never produced. *Cf. id*.

Even so, mere knowledge of the relevance to litigation is not enough to establish a duty to maintain evidence; otherwise, third-party spoliation claims would go well beyond the narrow circumstances in which they currently arise because mere knowledge would broaden liability. *See Thompson*, 704 N.E.2d at 137. In *Thompson*, the Court of Appeals recognized a duty because an insurance company, who regularly participates in litigation, knew why the evidence needed to be preserved and took possession of the evidence. *Id.* at 137–38. The court found it was "foreseeable that loss of the evidence would interfere with a claimant's ability to prove the underlying claim." *Id.* at 138. Yet Michaelis is not an insurance company that regularly participates in litigation. Instead, it is a restoration contractor that neither investigates claims nor gathers evidence for pending litigation. Furthermore, Michaelis did not take possession of the dehydrator, unlike the *Thompson* insurance company. Instead, Michaelis only constructed a temporary structure to protect the origin of the fire from elements, and cleaned up to a degree, during which process the dehydrator was discarded. Foreseeability of harm to Safeco's future speculative litigation is insufficient under these facts to establish a duty.

## D. Public policy concerns

Public policy considerations weigh heavily against recognizing third-party spoliation absent a special relationship. Finding a third-party spoliation claim here could cause future parties to go to great lengths to

preserve evidence for possible litigation for an unknown period of time. *Gribben*, 824 N.E.2d at 355. Third-party spoliation claims run the risk of duplicative litigation, *see Glotzbach*, 854 N.E.2d at 341 ("Proving damages in a third-party spoliation claim becomes highly speculative and involves a lawsuit in which the issue is the outcome of another hypothetical lawsuit."), and raise concerns of jury confusion and inconsistent results, *Gribben*, 824 N.E.2d at 355 (quoting *Cedars-Sinai Med. Ctr. v. Superior Ct. of Los Angeles Cnty.*, 954 P.2d 511, 519–20 (Cal. 1998)).

Safeco argues that public policy supports finding a third-party spoliation claim because the destruction of evidence "can destroy fairness and justice[.]" Appellant's Br. at 27. Yet "other remedies remain applicable[.]" *Glotzbach*, 854 N.E.2d at 341. For example, Safeco might have pursued a breach of contract claim. *See Thompson*, 704 N.E.2d at 140 (explaining the Thompsons could have sought alternative remedies). Safeco also argues a court should consider accountability when considering policy concerns and points to *Thompson* for support. But *Thompson* concerned an insurance company with a direct stake in the outcome of the litigation because it understood the significance of the evidence and the need to maintain it for litigation. *Id.* at 138. While Michaelis has a financial incentive to complete the work as requested and to Safeco's satisfaction, Michaelis does not have a stake in the result of litigation stemming from the fire. *Cf. id.* Safeco mainly argues that holding Michaelis accountable for its actions is reasonable because the claim is in the early stages of litigation and preclusion of such claim would ignore the strength of Indiana's common law tort doctrine. But, like *Wilmoth*, imposing a duty upon a third party to maintain **potential** evidence for **potential** litigation for an **unknown** amount of time is unreasonable. 893 N.E.2d at 1073. The balance of policy concerns does not support imposing a duty to preserve evidence on Michaelis.

## II. The trial court properly dismissed Safeco's negligence claim in Count IV of the amended complaint.

Safeco argues that if a third-party spoliation claim is not recognized, then Safeco can state a claim for negligence. A plaintiff alleging a negligence claim must show: "(1) duty owed to [the] plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *Goodwin*, 62 N.E.3d at 386 (cleaned up).

The trial court found both Counts III and IV of the amended complaint to be construed as third-party spoliation claims because Safeco incorporated and re-alleged the same acts or omissions as it did in Count III into Count IV. *See* Appellant's App. Vol. II, pp. 35–37. Safeco's negligence claim fails for the same reasons its third-party spoliation claim fails. There is a "preference to place substance over form[,]" *MDM Invs. v. City of Carmel*, 740 N.E.2d 929, 933 (Ind. Ct. App. 2000), *trans. not sought*; *see also Town of St. John v. Home Builders Ass'n of N. Ind., Inc.*, 428 N.E.2d 1299, 1302 (Ind. Ct. App. 1981) (treating a party's motion to reconsider as a T.R. 60 motion because it substantively met T.R. 60 motion's requirements), and the trial court did not err in dismissing Safeco's negligence claim because it is substantively a third-party spoliation claim.

Safeco also argued the trial court erred because Michaelis assumed a duty of care to preserve the evidence. Yet Safeco's amended complaint does not allege Michaelis was liable under an assumption of duty but raises it for the first time on appeal. *See Cox v. Mayerstein–Burnell Co.*, 19 N.E.3d 799, 807 (Ind. Ct. App. 2014) (explaining the non-movant was not required to negate an assumption of duty argument in summary judgment proceedings where assumption was not pled). Parties have ample opportunities to amend their complaint before the trial court; however, a party cannot amend the complaint as part of its appeal. *See Leeper Elec. Servs., Inc. v. City of Carmel*, 847 N.E.2d 227, 231 (Ind. Ct. App. 2006) (stating "a plaintiff may not seek to amend his complaint after

judgment unless he first has that judgment vacated or set aside under either T.R. 59 or T.R. 60" (quotations omitted)), *trans. denied*. This issue was not presented before the trial court and is thus waived. *See Allstate Ins. Co. v. Love*, 944 N.E.2d 47, 52 (Ind. Ct. App. 2011) (finding waiver of issue on appeal where the appellant failed to raise the question of damages to the trial court until after this Court had accepted jurisdiction); *see also Hopster v. Burgeson*, 750 N.E.2d 841, 848 (Ind. Ct. App. 2001) ("When an issue is not presented before the trial court, appellate review of that issue is waived." (quotations omitted)).

## Conclusion

The trial court did not err in dismissing Safeco's amended complaint against Michaelis. The trial court is affirmed.


Rush, C.J., and Slaughter and Molter, JJ. concur.
Goff, J., concurs in part and dissents in part with separate opinion.


ATTORNEYS FOR APPELLANT SAFECO INSURANCE COMPANY OF INDIANA
Crystal G. Rowe
KIGHTLINGER & GRAY, LLP
New Albany, IN

ATTORNEYS FOR APPELLEES BASS PRO OUTDOOR WORLD, L.L.C., CABELA'S RETAIL MO, L.L.C., BASS PRO GROUP, LLC, TMBC, L.L.C. OF MISSOURI, BLUE SKY INNOVATION GROUP, INC., CABELA'S WHOLESALE, L.L.C., AND BASS PRO, L.L.C.
Richard R. Skiles
Joseph A. Samreta
SKILES DETRUDE
Indianapolis, IN

ATTORNEYS FOR APPELLEES MICHAELIS CORPORATION

Alex M. Beeman

Joseph A. Zumpano

REMINGER CO., L.P.A.

Indianapolis, IN

**Goff, J., concurring in part and dissenting in part.**

The Court declines to extend the duty to preserve evidence to a fire-remediation company that undertook to preserve the scene of a house fire. In my view, the complaint supports reasonable inferences that the remediation company knew it was supposed to preserve the scene on the insurer's behalf for foreseeable litigation purposes. I would therefore reinstate the insurer's third-party spoliation claim.

## I. The law imposes a duty to preserve on those who, in conducting their business, retain material that may foreseeably be evidence.

Since Indiana courts first recognized the tort in 1998, our common law of third-party spoliation has evolved with a primary focus on the scope of the duty to preserve evidence.

In *Thompson ex rel. Thompson v. Owensby*, a dog had broken free of its cable and attacked a child. 704 N.E.2d 134, 135 (Ind. Ct. App. 1998). The child's family sought compensation from the landlords of the dog's owners. *Id.* The landlords' insurance company investigated and took possession of the cable, which it then lost. *Id.* The Court of Appeals explained that, at the motion-to-dismiss stage, the family had to allege "a cognizable relationship" with the insurance company, "foreseeable harm from the loss of evidence," and "sufficient supporting facts" to show that recognition of a duty "would promote Indiana's policy goals." *Id.* at 136–37. The court found each of these requirements satisfied. First, a relationship existed because the insurance company, carrying on "the business of providing liability insurance," took possession of the cable knowing that the family had made a claim for which the cable would be evidence. *Id.* at 137. Second, it "strain[ed] credulity" to imagine that the insurance company, having collected the cable, "could be unaware of the potential importance" of this "physical evidence." *Id.* Finally, public policy supported imposing a duty on insurance companies that take possession of evidence central to a claim. Insurers needed "some mechanism for collecting and preserving evidence" and could "adopt

business practices that lead to resolution of claims at the lowest possible cost to the carrier." *Id.* at 138, 139. This Court regards *Thompson* as standing for the recognition of a "cause of action for third-party spoliation." *See Glotzbach v. Froman*, 854 N.E.2d 337, 339 (Ind. 2006); *see also ante*, at 5.

In *Glotzbach*, this Court focused on the same three factors as *Thompson*, namely a "special relationship," "the foreseeability of harm," and, most importantly, "policy considerations." 854 N.E.2d at 340–41. We declined, however, to extend the duty to preserve evidence to the wholly different context of an employer who had collected and disposed of its own industrial equipment after that equipment exploded and killed an employee. *Id.* at 338, 342. The employer had not collected the material as evidence for a claim, we reasoned, and there were "other remedies" for deterring spoliation: sanctions under the criminal law and, for attorneys, the Rules of Professional Conduct; contempt of court; and an employer's ability to recoup worker's compensation benefits if it establishes product liability. *Id.* at 341 (citations omitted). We deemed it contrary to public policy to allow "highly speculative" satellite litigation that the worker's compensation statute is "designed to foreclose." *Id.* Finally, we declined to "impose an obligation to retain useless equipment indefinitely." *Id.* at 342.

In *American National Property and Casualty Company v. Wilmoth*, the Court of Appeals analyzed another insurance-company case but distinguished the facts from *Thompson*. 893 N.E.2d 1068 (Ind. Ct. App. 2008). In *Wilmoth*, there was a fatal house fire, after which the landlords discarded a couch that firefighters had thrown outside. *Id.* at 1069–70. The plaintiffs' experts later determined that the fire started with electrical wiring near the couch. *Id.* at 1070. The plaintiffs sued the insurance company for failing to preserve the couch. *Id.* But the court refused to impose such a duty on the insurance company, noting that it "never had possession" of the couch and that, at the time the couch was discarded, there was no lawsuit and no indication that the couch was involved in the matter. *Id.* at 1071. What's more, the court explained, it would be practically impossible to require insurers "to preserve any potentially relevant evidence available after any potentially covered event." *Id.* at 1073.

Finally, in *Shirey v. Flenar*, the Court of Appeals imposed on a physician a duty to preserve his patient's medical records. 89 N.E.3d 1102, 1111 (Ind. Ct. App. 2017). The court noted that the physician was "responsible" for the patient's care and "the presumptive safekeeper" of the records of that care. *Id.* at 1108. He was "aware," the court added, that the patient wanted her records, which stemmed from injuries sustained in a car accident. *Id.* at 1103, 1109. Finally, the court explained, no "alternative sanctions" for the loss of evidence were viable and physicians "generally maintain medical records anyway." *Id.* at 1110.

In sum, a common thread in our common law is that defendants whose business practices involve the retention of material or records (*e.g.*, insurers and physicians) can be held liable for losing what may foreseeably be pertinent evidence in a lawsuit.

## II. We should extend the duty to preserve to a fire-remediation firm.

This case reaches us on de novo review of a successful motion to dismiss. *Ante*, at 2–3. We should affirm only if it "appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief." *Bellwether Props., LLC v. Duke Energy Indiana, Inc.*, 87 N.E.3d 462, 466 (Ind. 2017) (internal quotation marks and citation omitted). In making this assessment, we draw "every reasonable inference in that party's favor." *Id.* (citation omitted).

Admittedly, SafeCo Insurance Company's complaint alleges a rather bare-bones set of facts to support its third-party spoliation claim against Michaelis Corporation. Nevertheless, in my view, it contains sufficient facts to infer that SafeCo may be entitled to relief.

The Court concludes that there is no "special relationship" between SafeCo and Michaelis, noting that there was no contract between them. *Ante*, at 8. But SafeCo's complaint alleges that "the need to preserve the kitchen was verbally communicated" to Michaelis and that Michaelis then "constructed a temporary structure to provide better weather protection and tarping over the area of fire origin." App. Vol. II, p. 32. Common

sense suggests that Michaelis did not undertake this work without reaching an understanding with somebody that it was going to preserve the kitchen. Reasonable inferences lead to the conclusion that Michaelis agreed to preserve the scene of the fire on behalf of either SafeCo or the homeowner (and thus SafeCo as her insurance subrogee). That might be enough of a relationship to support a duty. *See Glotzbach*, 854 N.E.2d at 339 (explaining that the duty to preserve evidence must rest on "'an independent tort, contract, **agreement**, or special relationship'") (quoting *Murphy v. Target Products*, 580 N.E.2d 687, 690 (Ind. Ct. App. 1991)) (emphasis added).

The clincher, though, is that Michaelis is concededly a "remediation company." Tr. Vol. II, p. 8. While the record discloses little about its business, I understand that such companies typically clean up and make repairs after accidents like fires and water leaks—incidents in which insurance claims and litigation are often involved, as here. Moreover, the complaint tells us that Michaelis representatives attended a meeting at the scene of the fire with SafeCo's "representatives and consultants," who determined that "the fire likely originated on the kitchen countertop," where the dehydrator "was located." App. Vol. II, p. 31. These allegations imply that Michaelis knew the dehydrator was of interest to SafeCo and thus probably relevant to potential litigation. There is enough in the complaint to infer that Michaelis agreed to preserve the scene, which included the dehydrator, on behalf of SafeCo or its insured for litigation purposes.

For the reasons just stated, I also find that SafeCo sufficiently alleged that it was foreseeable to Michaelis that discarding the dehydrator would hamper litigation.

Finally, and most importantly, public policy supports extending the duty to preserve to remediation companies. Just as the insurance company in *Thompson* and the physician in *Shirey* were in the business of preserving material and records, so it is reasonable at this stage to infer that remediation companies are in the business of preserving the scenes of accidents. The meeting at the scene of the fire in this case is illustrative. Remediation companies, together with insurers, are well placed to ensure

preservation measures are taken efficiently and effectively. And there is no viable remedy for the loss of evidence in cases of fires and water leaks other than a third-party spoliation claim.

In sum, the face of the complaint does not demonstrate that SafeCo has no claim for relief. Rather, reasonable inferences suggest that this case may fall within the principles of our common-law third-party spoliation tort.

## III.     Conclusions.

For the reasons given, I would reinstate SafeCo's spoliation claim and remand for further factual development. I would affirm, however, dismissal of SafeCo's negligence claim because, as the Court explains, "it is substantively a third-party spoliation claim." *Ante*, at 11. Spoliation is a specialized area of the law requiring policy considerations which the regular law of negligence does not account for. *See* Bart S. Wilhoit, *Spoliation of Evidence: The Viability of Four Emerging Torts*, 46 UCLA L. Rev. 631, 637 (1998) (noting that spoliation law is "unclear and has many ambiguities").

Accordingly, I dissent from the Court's decision on the spoliation claim and concur with the Court's decision on the negligence claim.